IN THE SUPREME COURT OF NORTH CAROLINA

No. 390PA16

Filed 2 March 2017

STATE OF NORTH CAROLINA

v.

LINDA BETH CHEKANOW and ROBERT DAVID BISHOP

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, 791 S.E.2d 872 (2016), reversing and remanding judgments entered on 5 August 2015 by Judge R. Stuart Albright in Superior Court, Alleghany County. Heard in the Supreme Court on 9 October 2017.

*Joshua H. Stein, Attorney General, by Adrian W. Dellinger, Assistant Attorney General, for the State-appellant.*

*J. Clark Fischer for defendant-appellees.*

BEASLEY, Justice.

In this appeal we consider whether evidence was sufficient to permit a jury to find defendants were aware of, and exercised control over, the twenty-two marijuana plants found growing on their property. The Court of Appeals concluded that defendants did not have exclusive possession of the portion of the property where the plants were found, and therefore, the State was required to show evidence of other incriminating circumstances to survive defendants' motion to dismiss. Because the

Court of Appeals held the State failed to show other incriminating circumstances that would permit a jury to find defendants were aware of, and exercised control over, the marijuana plants, the unanimous panel reversed the trial court's judgments, and remanded the matter to the trial court for entry of an order granting defendants' motions to dismiss. We hold that despite defendants' nonexclusive control, the State presented sufficient evidence of other incriminating circumstances to allow the case to go to the jury. Accordingly, we reverse the decision of the Court of Appeals.

Defendants were charged with manufacturing marijuana, possession with intent to manufacture, sell, or deliver marijuana, and felony possession of marijuana and were tried during the 3 August 2015 criminal session of Superior Court in Alleghany County.[1]

At trial, the State's evidence tended to show that on 21 August 2014, law enforcement agencies, while conducting marijuana eradication operations by helicopter, observed marijuana plants growing on a three-acre parcel of land owned by defendants. The officers were initially alerted to defendants' property because they observed defendant Chekanow standing on the front porch of her home making an obscene gesture ("shooting the bird") at the helicopter. When officers arrived at the property, they found defendant Chekanow attempting to leave her house in a

---

[1] Defendants waived any conflict of interest, were represented by the same defense attorney, and were tried jointly.

vehicle. The officers directed her back to her home and she complied. Chekanow was the only person present at the residence, and she consented to a search of the area where the plants were located, the outbuildings, and her home.

Officers on the ground located twenty-two marijuana plants growing on a fenced-in, one-half acre portion of defendants' property. This area was bordered by a woven wire fence and contained a chicken coop, defendants' chickens, and fruit trees. Officers testified the fence was approximately four feet high and not easy to climb over. In addition, officers testified the single gate to the fence was located adjacent to defendants' yard. One officer testified that to access the fenced-in area, one would have to be "right there in front of the house, at the front yard," and there were no other designated access points from the public roadway. As the officers walked to the location where the plants were growing, one observed that the grass along the fence line was not as high as elsewhere; instead, it had been "cut down, mowed, trampled on." Also, inside the fenced-in area was a "cleared-out area . . . maybe weed-eated, mowed, where the chicken house was." Further, an officer in the helicopter testified that a trail leading from the house to the plants was visible from the air. The path of the trail appeared to be "smashed down" as if it had been used regularly.

The marijuana plants were located sixty to seventy yards beyond the gate; fifty to seventy-five yards, or approximately two hundred feet, from defendants' house; and ten to twenty yards from a mowed and maintained area with a trampoline. The

plants were "well taken care of," growing in a row in a cleared area behind some high weeds, and were placed in a location that allowed them to blend in with the weeds. Officers on the ground testified they could not see the marijuana plants until they were "right on top of [them]" or about five to ten feet away from the plants. The plants were approximately three to five feet in height, and the ground at the base of the plants had been tilled. One officer testified that it appeared the plants were started individually in a pot and then transferred into the ground.

During the search, no marijuana or related paraphernalia was found in the home or outbuildings; however, officers did locate small and large pots, shovels, trowels, and other gardening equipment. One officer testified to finding a "small starter kit" consisting of a very small cardboard cup:

> Through my experience, we have seen that multiple times . . . . they will plant the seeds—marijuana seeds into a starter kit, which are the small cups that are cardboard. And then they grow [the marijuana plants] to a certain height or maturity; then they transplant them from there to a bigger bucket or a planter until they reach another maturity level. And then once a fuller maturity level is reached, then they will take those and plant them into dirt . . . .

The officer further testified that the gardening equipment could have been used for growing marijuana or for legitimate gardening purposes because defendants had a garden and potted plants on the property in addition to the marijuana plants. One of the shovels was covered in dirt that was similar to the dirt at the base of the marijuana plants, whereas the dirt in the garden was brown.

The evidence was uncontroverted that defendants had owned and occupied the property on which the marijuana plants were found for about nine years. Defendants' nine-year old son also lived in the home. Defendants testified that another individual—who lived nearby and possessed a key to defendants' house—had been on their property frequently to perform yard work, maintenance, and take care of the house and animals while defendants were out of town. Defendants maintained they had no knowledge of the marijuana plants.

Because the State could not prove actual possession of the marijuana plants, the State proceeded on the theory of constructive possession based on the foregoing evidence. At the close of the State's evidence and again at the close of all the evidence, defendants moved to dismiss the charges for insufficient evidence. The trial court denied both motions. On 5 August 2015, a jury found both defendants guilty of all charges against them, and the trial court sentenced defendants to six to seventeen months of imprisonment, suspended for eighteen months subject to supervised probation.

Defendants appealed their convictions to the Court of Appeals, arguing the trial court erred in denying their motions to dismiss because the State presented insufficient evidence to establish that they were in constructive possession of the plants.[2] The Court of Appeals agreed with defendants, holding that though

---

[2] The Court of Appeals noted the defendants raised three proposed issues on appeal,

defendants' ownership and occupation of the property created an "inference of constructive possession," the defendants' possession of the property was not exclusive and the State "failed to show other incriminating circumstances" which would permit a jury to find defendants were aware of, and exercised control over, the marijuana plants. *State v. Chekanow*, ___ N.C. App. ___, 791 S.E.2d 872, 2016 WL 5746386, at *4 (2016) (unpublished). The court reversed the trial court's judgments, and remanded the matter to the trial court for entry of an order granting defendants' motions to dismiss. *Id.* This Court granted the State's petition for discretionary review of the sufficiency issue.

In this case, we review a unique application of the constructive possession doctrine. The doctrine is typically applied in cases when a defendant does not have actual possession of the contraband, but the contraband is found in a home or in a vehicle associated with the defendant; however, in this case we examine the doctrine as applied to marijuana plants found growing on a remote part of the property defendants owned and occupied. The sole issue presented in this appeal is whether the trial court properly denied defendants' motions to dismiss, in which defendants argued the State presented insufficient evidence showing defendants were aware of, and exercised control over, the twenty-two marijuana plants growing on their property.

---

but only addressed one in their brief. The court did not address the other two issues and deemed them to be abandoned, pursuant to N.C. Rule of Appellate Procedure 28(b).

"In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (quoting *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998), *cert. denied*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002)). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.* at 301, 560 S.E.2d at 781 (citation omitted).

"In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). "[T]he trial court is concerned only with the sufficiency of the evidence to take the case to the jury and not with its weight," and "[t]he test of the sufficiency of the evidence to withstand the motion is the same whether the evidence is direct, circumstantial or both." *State v. Malloy*, 309 N.C. 176, 178-79, 305 S.E.2d 718, 720 (1983). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 913, 919 (1993) (quoting *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988))), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Once the court

decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then 'it is for the jury to decide whether the facts . . . satisfy [the jury] beyond a reasonable doubt that the defendant is actually guilty.' " *Id.* at 379, 526 S.E.2d at 455 (quoting *Barnes*, 334 N.C. at 75-76, 430 S.E.2d at 919). But if "the evidence is . . . sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed." *Malloy*, 309 N.C. at 179, 305 S.E.2d at 720 (citing *State v. Poole*, 285 N.C. 108, 119, 203 S.E.2d 786, 793 (1974)). "Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Crockett*, 368 N.C. 717, 720, 782 S.E.2d 878, 881 (2016) (citing *State v. Cox*, 367 N.C. 147, 150-51, 749 S.E.2d 271, 274-75 (2013)).

To survive a motion to dismiss when a defendant has been charged with manufacturing marijuana, possession with intent to manufacture, sell, or deliver marijuana, and felony possession of marijuana, the State must provide substantial evidence that the defendant knowingly possessed the marijuana. N.C.G.S. § 90-95(a)(1), (a)(3), (d)(4) (2015). Possession of contraband may be actual or constructive. *State v. Minor*, 290 N.C. 68, 73, 224 S.E.2d 180, 184 (1976).

In this case the State proceeded on a theory that defendants constructively possessed the marijuana plants. A defendant constructively possesses contraband

when he or she does not have actual possession of the contraband but has " 'the intent and capability to maintain control and dominion over' it." *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (quoting *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986)). A finding of constructive possession requires a totality of the circumstances analysis. *See Miller,* 363 N.C. at 99, 678 S.E.2d at 594; *see also State v. James*, 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986) ("As the terms 'intent' and 'capability' suggest, constructive possession depends on the totality of circumstances in each case."). "The defendant may have the power to control either alone or jointly with others." *Miller,* 363 N.C. at 99, 678 S.E.2d at 594 (citing *State v. Fuqua*, 234 N.C. 168, 170-71, 66 S.E.2d 667, 668 (1951)).

When contraband is "found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which *may* be sufficient to carry the case to the jury on a charge of unlawful possession." *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270-71 (2001) (quoting *State v. Harvey,* 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972)) (emphasis added). "However, unless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred." *Id*. at 552, 556 S.E.2d at 271 (quoting *State v. Davis,* 325 N.C. 693, 697, 386 S.E.2d, 187 190 (1989)).

In our jurisprudence, cases relying on a defendant's exclusive possession of the place the contraband is found have been limited to the specific factual circumstances when contraband was discovered inside a contained area such as a home or vehicle of which the defendant was the *sole* owner, resident, or occupant at the time the contraband was discovered. *See Harvey*, 281 N.C. at 12-13, 187 S.E.2d at 714 (The evidence supported a reasonable inference that the marijuana was in the defendant's possession when marijuana was found in the defendant's home, within three or four feet from him, and the defendant was the sole occupant of the room in which it was found.); *see also* Jessica Smith, *North Carolina Crimes* 702 (7th ed. 2012) (comparing two hypotheticals to explain the concept of exclusive possession: "[I]f drugs are found in a closet in the defendant's home and the defendant is the *sole* resident of the home, the evidence of constructive possession is sufficient to take the issue to the jury." But if drugs are found "in a vehicle driven by one person and carrying several others as passengers," the defendant is not in exclusive possession and other incriminating circumstances must be shown. (emphasis added)); *cf. Davis*, 325 N.C. at 695-97, 386 S.E.2d at 188-190 (requiring the State, despite the defendant's ownership of the mobile home, to prove other incriminating circumstances when seven individuals were present in the mobile home at the time the contraband was discovered). Unlike *Harvey*, the evidence in this case established that both defendants lived in the home with their son, and defendants allowed another individual regular access to their

property to help with maintenance and to care for their property while defendants were away on vacation.

Further, this case involves consideration of a more sprawling area of real property that included a remote section where the marijuana was growing and to which others could potentially gain access. In *State v. Spencer*, an opinion issued on the *same day* as *Harvey*, this Court did not rely on ownership and occupation of the premises alone to determine the evidence was sufficient to show the defendant constructively possessed marijuana discovered in a pig shed approximately twenty yards behind his home and marijuana growing in a cornfield fifty-five yards beyond the pig pen. 281 N.C. 121, 129-30, 187 S.E.2d 779, 784-85 (1972). Rather, the Court also considered that the defendant had been seen in and around the shed, that marijuana seeds were found in his bedroom, and that a path linked the pig shed to the cornfield when holding that the evidence in that case raised a reasonable inference that the defendant exercised control over the pig shed, the cornfield, and their contents. *Id.* at 129-30, 187 S.E.2d at 784-85. The Court in *Spencer* did not mention, much less apply, the standard it issued in *Harvey* and relied instead on other incriminating circumstances, indicating there is a meaningful distinction in one's ability to control a contained space such as a home and vehicle versus sprawling property.

Thus, for evidence of constructive possession to be sufficient, if the defendant owns the premises on which the contraband is found, (1) he must also have exclusive possession of the premises on which the contraband is found, or (2) the State must show additional incriminating circumstances demonstrating the defendant has dominion or control over the contraband.[3] *See Matias*, 354 N.C. at 552, 556 S.E.2d at 270-71 (synthesizing the law of constructive possession); *Davis*, 325 N.C. at 697-98, 386 S.E.2d at 190 (same). Reiterating that this is an inquiry that considers all the circumstances of the individual case, when there is evidence that others have had access to the premises where the contraband is discovered, whether they are other occupants or invitees, or the nature of the premises is such that imputing exclusive possession would otherwise be unjust, it is appropriate to look to circumstances beyond a defendant's ownership and occupation of the premises. As stated by two federal courts of appeals, " 'when there is joint occupancy of a residence, dominion over the premises by itself is insufficient to establish constructive possession. In joint occupancy cases, there must be some additional nexus linking the defendant to the contraband." *United States v. Wright*, 739 F.3d 1160, 1168 (8th Cir. 2014) (citations omitted), *quoted in United States v. Blue*, 808 F.3d 226, 232 (4th Cir. 2015); *accord*

---

[3] In a nonexclusive possession context, ownership of property is insufficient on its own to withstand a motion to dismiss. *Contra State v. Tate*, 105 N.C. App. 175, 179, 412 S.E.2d 368, 370-71 (1992) (stating that "[i]n North Carolina, an inference of constructive possession arises against an owner or lessee who occupies the premises where contraband is found, regardless of whether the owner or lessee has exclusive or nonexclusive control of the premises").

*State v. Thorpe*, 326 N.C. 451, 455-56, 390 S.E.2d 311, 314 (1990) (looking beyond the defendant's ownership and occupation of the bar and pool room to consider other incriminating circumstances).[4]

Considering the circumstances of this case, neither defendant was in sole occupation of the premises on which the contraband was found, defendants allowed another individual regular access to the property, and the nature of the sprawling property on which contraband was found was such that imputing exclusive control of the premises would be unjust.[5] Therefore, we must analyze the additional incriminating circumstances present in this case.

---

[4] The State cites *State v. Thorpe* as a case relying on *Harvey*'s standard for ownership and occupation being sufficient to take a constructive possession case to the jury. To be sure, *Thorpe* did include language from *Harvey* in its analysis. *See State v. Thorpe*, 326 N.C. 451, 455, 390 S.E.2d 311, 314 (1990). However, *Thorpe* did not merely rely on *Harvey* because *Thorpe* was not an exclusive possession scenario. *See id.* at 455, 390 S.E.2d at 314. In *Thorpe*, the defendant did not have exclusive possession over the bar he owned because others had access to the bar and pool room. *See id.* at 455, 390 S.E.2d at 314. Thus, in its sufficiency analysis, the Court considered, in addition to the defendant's property ownership (which was "strong evidence of control") and his physical presence on the premises, the defendant's ability to personally control who entered the premises by use of a key, an officer's observation of defendant alone in the game room or behind the bar on more than one occasion, and the defendant's participation in the sale of controlled substances by knowing the undercover officer's errand and directing her inside. *Id.* at 455-56, 390 S.E.2d at 314. Rather than rely on ownership and occupation alone, the Court in *Thorpe* applied a totality of the circumstances test with property ownership being a weighty, but not dispositive, factor. *See id.* at 455, 390 S.E.2d at 314 ("We hold that, considered as a whole, as required, the circumstantial evidence of defendant's power and intent to control the sale of dilaudid on both dates listed in the indictments was sufficient to support an inference of both his possession with an intent to sell or deliver that controlled substance and his participation in the transfer transactions themselves.").

[5] The circumstances of this case raise several practical considerations cautioning

If the defendant is not in exclusive possession of the place where contraband is found, to survive a motion to dismiss the State must show other incriminating circumstances linking the defendant to the contraband. *Miller,* 363 N.C. at 99, 678 S.E.2d at 594 (citing *Matias,* 354 N.C. at 552, 556 S.E.2d at 271). Whether incriminating circumstances exist to support a finding of constructive possession is a fact-specific inquiry. *Id.* at 99-100, 678 S.E.2d at 594-95. In determining whether sufficient incriminating circumstances exist to support a finding of constructive possession, a review of this Court's cases reveals that we have considered the following factors: (1) the defendant's ownership and occupation of the property (as previously discussed); (2) the defendant's proximity to the contraband; (3) indicia of the defendant's control over the place where the contraband is found; (4) the defendant's suspicious behavior at or near the time of the contraband's discovery; and (5) other evidence found in the defendant's possession that links the defendant to the contraband. *See id.* at 99-100, 678 S.E.2d at 594-95 (explaining that proximity and indicia of control are two factors frequently considered in this analysis); *see State v. Butler*, 356 N.C. 141, 147-48, 567 S.E.2d 137, 141 (2002) (considering the defendant's suspicious actions among the sufficient "additional incriminating circumstances"); *State v. Brown*, 310 N.C. 563, 569-70, 313 S.E.2d 585, 588-89 (1984) (considering the defendant's possession of over $1,700 in cash on his person among the sufficient

---

against the creation of bright line rules which could serve to implicate other innocent property owners in constructive possession cases.

"other incriminating circumstances"). No one factor controls, and courts must consider the totality of the circumstances. *See Miller,* 363 N.C. at 99-101, 678 S.E.2d at 594-95 ("Our cases addressing constructive possession have tended to turn on the specific facts presented."); *State v. Butler*, 147 N.C. App. 1, 11, 556 S.E.2d 304, 311 (2001) ("[C]onstructive possession depends on the totality of the circumstances in each case.") (quoting *State v. Jackson*, 103 N.C. App. 239, 243, 405 S.E.2d 354, 357 (1991), *aff'd per curiam*, 331 N.C. 113, 413 S.E.2d 798 (1992))), *aff'd*, 356 N.C. 141, 567 S.E.2d 137 (2002). However, we reiterate, as this Court did in *Thorpe*, that ownership of the premises on which the contraband is found is "strong evidence of control," and thus, should be considered as a weighty factor in the analysis. *See Thorpe,* 326 N.C. at 455, 390 S.E.2d at 314.

First, in addressing a defendant's proximity to the contraband, this Court considers proximity in terms of space and time. For example, in *Miller* evidence was sufficient when, *inter alia*, contraband was found within the defendant's reach. 363 N.C. at 100, 678 S.E.2d at 595. In *State v. Bradshaw*, we considered evidence that the defendant had recently occupied the location where the contraband was found. 366 N.C. 90, 96-97, 728 S.E.2d 345, 349-50 (2012). Specifically, in *Bradshaw*, evidence was sufficient when, *inter alia*, the defendant had been present in the place where the contraband was found approximately two days later, *id.* at 96-97, 728 S.E.2d at 349-50, while in *State v. Finney* evidence of the defendant's prior presence in the location where the contraband was found some forty-four days later was held

to be insufficient to support a finding of constructive possession, 290 N.C. 755, 760-61, 228 S.E.2d 433, 436 (1976).

Here, the State's evidence shows that defendants' residence was approximately two hundred feet from the plants. The plants were also growing thirty to sixty feet from a mowed and maintained portion of the property that contained a trampoline. Addressing temporal proximity, there is evidence that the ground at the base of the plants had been recently cleared of leaves and pine needles, that the plants had been maintained for approximately two and a half months, and that the area surrounding the plants had been recently accessed and maintained by defendant Bishop. Thus, in the present case, the close proximity of the growing plants to an area maintained by defendants, the reasonably close proximity of defendants' residence to the plants, and one defendant's recent access to the area where the plants were found growing are all factors to consider in the sufficiency analysis.

Second, this Court has considered as an indicator of control over the place where the contraband is found whether a defendant's personal items were found in the same location as the contraband. In *Miller,* this Court held the State's evidence was sufficient when, *inter alia*, defendant's birth certificate and State-issued identification card were found next to small plastic baggies and in the same room as cocaine. 363 N.C. at 97-98, 678 S.E.2d at 593. Also, a defendant's opportunity to place contraband in the place where it was found is additional indicia of control. In

*Matias*, the State's evidence was sufficient when, *inter alia*, officers discovered contraband in the space between the pads in the seat where the defendant had been sitting, 354 N.C. at 552-53, 556 S.E.2d at 271, and in *Brown,* evidence was sufficient when, *inter alia*, the defendant possessed a key to the residence where contraband was found, 310 N.C. at 569-70, 313 S.E.2d at 589.

Here, in addition to defendants' proximity to the marijuana plants, multiple indicia of control are present from which the jury could infer knowledge and possession. The marijuana plants were surrounded by a fence that was not easily surmountable. Similar to the defendant in *Thorpe*, defendants here had the ability to control who entered this portion of the property by establishing the sole entry point in the front yard next to their home. Also, as in *Bradshaw*, there is additional evidence here that at least one of the defendants had recently occupied the area where the marijuana was found. On the date the plants were discovered, defendant Chekanow stated that she had not been in that area of the property for over a year, while defendant Bishop testified to mowing about twenty percent of the fenced-in area, including mowing a path for the chickens around the chicken coop, a path around defendants' fruit trees, and an area roughly six feet from the fence line, indicating he frequently occupied the half-acre area. Also, viewing the evidence in the light most favorable to the State, one officer reported a trail leading from defendants' residence, by the chicken coop, and to the location where the marijuana plants were growing. This officer, who observed the trail from the helicopter, stated

that the grass appeared to be "smashed down" as though it had been walked on regularly. Additionally, like the defendant in *Miller*, the evidence here indicates that additional items belonging to defendants were in the same location as the contraband in that defendants kept their chickens and chicken coop in the same fenced-in, one-half acre of their property where the marijuana was growing.

Third, this Court has considered evidence of a defendant's suspicious behavior in conjunction with the discovery of the contraband. For example, in *Butler*, this Court held the State's evidence was sufficient to survive a motion to dismiss when, *inter alia*, defendant made eye contact with officers and then proceeded to walk "very briskly" through a bus terminal, repeatedly glancing back at the officers following him, before hurrying into a taxicab and shouting "let's go, let's go, let's go." 356 N.C. at 147-48, 567 S.E.2d at 141. The evidence here shows that defendant Chekanow directed an "unfortunate gesture" at the clearly marked State Highway Patrol helicopter as it flew over her property. Further, in the light most favorable to the State, defendant Chekanow appeared to flee the premises in a vehicle as the helicopter hovered to investigate the possible field of marijuana.

Finally, in its sufficiency analysis, this Court has considered additional evidence found in defendant's possession which links the defendant to the contraband. For example, in *Brown*, in addition to the defendant's proximity to the cocaine and indicia of his control over the apartment where the cocaine was

discovered, this Court also considered that officers found over $1,700 in cash on the defendant's person in determining there was sufficient evidence of constructive possession. 310 N.C. at 569, 313 S.E.2d at 589. Also, in *State v. Spencer*, the Court considered in its sufficiency analysis the fact that officers found marijuana seeds in the defendant's bedroom at the same time marijuana plants were found in a dilapidated shed located twenty yards behind defendant's home. 281 N.C. at 129-30, 187 S.E.2d at 784.

Here, a search of defendants' property resulted in the discovery of gardening equipment outside an outbuilding. Though officers conceded the tools could have been used either for marijuana cultivation or innocent gardening, the State's evidence further revealed dark red dirt found on the shovel consistent with the dark red clay at the base of the marijuana plants, while the soil in defendants' garden was dark brown. In the light most favorable to the State, this evidence shows the tools found in or around defendants' outbuilding, including a "starter kit," were used to cultivate the marijuana plants.

Defendants provide several arguments based on their testimony at trial to rebut their alleged knowledge and possession of the marijuana plants; however, this evidence is for the jury to weigh, not the trial court, and it is certainly not for the appellate courts to reweigh. Further, "[t]he State's evidence *need not* exclude every reasonable hypothesis of innocence before the trial court properly can deny the

defendant's motion to dismiss for insufficiency of the evidence." *Beaver*, 317 N.C. at 651, 346 S.E.2d at 481 (citing *State v. Riddick,* 315 N.C. 749, 759, 340 S.E.2d 55, 61 (1986)). When a trial court rules on a motion to dismiss, the court gives considerable deference to the State's evidence. Here, the Court of Appeals simply failed to consider the State's presentation of incriminating circumstances in addition to defendants' proximity to the contraband and ownership of the property on which it was found; in sum, instead of focusing on what the State did provide, the court focused on what the State did not produce in distinguishing this case from other constructive possession cases in which evidence was found sufficient to withstand a motion to dismiss.

Notwithstanding defendants' nonexclusive possession of the location in which the contraband was found, we hold there is sufficient evidence of constructive possession when the State presents evidence of defendants' ownership of the property on which the plants were growing, defendants' reasonable proximity to the growing marijuana plants, defendants' ability to control access to that portion of the property via a fence and sole entry point, one defendant's recent maintenance of the area where the plants were found, the presence of defendants' chickens and their chicken coop in the area where the plants were found, one defendant's suspicious behavior—the gesture and flight—before the discovery of the plants, and the discovery of equipment on defendants' property that could have been used to cultivate the plants. From this evidence a jury could reasonably infer that defendants knowingly possessed the

marijuana plants. Thus, the trial court properly denied defendants' motions to dismiss for insufficiency of the evidence.

Therefore, for the reasons stated above, we reverse the decision of the Court of Appeals as to the issue before us on appeal and instruct that court to reinstate the trial court's judgment.

REVERSED.

Justice NEWBY concurring in the result only.

Exclusive possession is a right inherent to the ownership of real property. While the majority concedes that defendants owned and occupied the property, it proceeds on a theory of nonexclusive constructive possession, without acknowledging that defendants, as the owners in possession, have the "intent and capability to maintain control and dominion" over their three-acre residential property. Because property ownership by definition includes the right to exclusive possession, under the facts of this case defendants' ownership and occupancy raise an inference of constructive possession sufficient to submit the case to the jury. Accordingly, I concur in the result only.

*Newby, J., concurring in the result only*

The only question presented by this appeal is whether the State presented substantial evidence that defendants knowingly possessed the twenty-two mature, growing marijuana plants located on a one-half acre portion of their three-acre residential property. The majority applies the test for constructive possession which requires proof of defendants' "intent and capability to maintain control and dominion over" the marijuana plants on their real property, having either sole or joint control, and considering the totality of the circumstances. Here it is undisputed that defendants, being in actual possession of the land, owned and occupied the three-acre residential property where the marijuana was growing. *See Matthews v. Forrest*, 235 N.C. 281, 284, 69 S.E.2d 553, 556 (1952) (opining that actual possession of land includes acting in dominion over it and making the ordinary use of it).

The majority acknowledges that our cases recognize "exclusive possession" arising under circumstances "when contraband was discovered inside a contained area such as a home or vehicle of which the defendant was the *sole* owner, resident, or occupant." Nonetheless, the majority concludes that "[c]onsidering the circumstances of this case, neither defendant was in sole occupation of the premises on which the contraband was found, defendants allowed another individual regular access to the property, and the nature of the sprawling property on which contraband was found was such that imputing exclusive control of the premises would be unjust." Apparently based upon an assumption that a three-acre parcel is "sprawling" to which "defendants allowed another individual regular access," the majority declares

*Newby, J., concurring in the result only*

defendants' possessory interest in their property "nonexclusive." "Nonexclusive" means not having the power to exclude others from use of the property. *Cf. Exclusive possession*, *Black's Law Dictionary* (10th ed. 2014) ("The exercise of exclusive dominion over property, including the use and benefit of the property."); *Webster's Third New International Dictionary* 793 (1971) ("excluding or having power to exclude (as by preventing entrance or debarring from possession, participation, or use) . . . . limiting or limited to possession, control, or use (as by a single individual or organization or by a special group or class)").

Yet, by definition, ownership of land includes the right to exclusive possession.

> There is nothing which so generally strikes the imagination and engages the affections of mankind, as the right of property; or that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe.

3 William Blackstone, *Commentaries* \*1-2; *see id.* at \*8 (noting as a foundational principle that the right of property "g[ives] a man an exclusive right to retain in a permanent manner . . . specific land, which before belonged generally to every body, but particularly to nobody," and that this right "excludes every one else but the owner from the use of it"). By definition, property includes "[c]ollectively, the rights in a valued resource such as land . . . . It is common to describe property as a 'bundle of rights.' "[1] *Property*, *Black's Law Dictionary* (10th ed. 2014).

---

[1] *See also Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 831, 107 S. Ct. 3141, 3145, 97 L. Ed. 2d 677, 685-86 (1987) ("We have repeatedly held that, as to property reserved by

*Newby, J., concurring in the result only*

"Property rights are 'in rem' rights. That is, they are rights that may be exercised and that are protectable 'against all the world.' Thus, if a person has a property right, that person has a right to exclude others from the use of the determinate thing that is owned." 1 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 1.03, at 1-11 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 6th ed. 2011); *see also Hildebrand v. S. Bell Tel. & Tel. Co.*, 219 N.C. 402, 408, 14 S.E.2d 252, 256 (1941) ("The term [property] comprehends not only the thing possessed but also, in strict legal parlance, means the right of the owner to the land; the right to possess, use, enjoy and dispose of it, and the corresponding right to exclude others from its use."). "Thus, it would appear that property is a right of exclusive dominion and unrestricted user, within the law." *Stedman v. City of Winston-Salem*, 204 N.C. 203, 204, 167 S.E. 813, 814 (1933); *see also Vann v. Edwards*, 135 N.C. 661, 665, 47 S.E. 784, 786 (1904) (defining "property" as "rightful dominion over external objects; ownership; the unrestricted and exclusive right to a thing; the right to dispose of the substance of a thing in every legal way, to possess it, to use it and to exclude every one else from interfering with it").

In accordance with these fundamental principles of real property ownership, "[c]onstructive possession has been found when the contraband was on the property

---

its owner for private use, 'the right to exclude [others is] "one of the most essential sticks in the bundle of rights that are commonly characterized as property." ' " (Alteration in original) (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 433, 102 S. Ct. 3164, 3175, 73 L. Ed. 2d 868, 881 (1982))).

in which the defendant had some *exclusive possessory interest* and there was evidence of his or her *presence* on the property and it has been found where possession is not exclusive but defendant exercises sole or joint physical custody." *State v. Thorpe*, 326 N.C. 451, 454-55, 390 S.E.2d 311, 313 (1990) (emphases added) (citing *State v. Harvey*, 281 N.C. 1, 187 S.E.2d 706 (1972), and *State v. Brown*, 310 N.C. 563, 313 S.E.2d 585 (1984)). Much like an essential aspect of real property ownership, constructive possession has been described by this Court as the "intent and capability to maintain control and dominion over," *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986), or the "power and intent to control":

> He has possession of the contraband material . . . when he has both the power and intent to control its disposition or use. Where such materials are found on the premises under the control of an accused, this fact, in and of itself, gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession.

*Harvey*, 281 N.C. at 12, 187 S.E.2d at 714. As a result, "constructive possession can be reasonably inferred from the fact of ownership of premises where contraband is found." *Thorpe*, 326 N.C. at 455, 390 S.E.2d at 314; *id.* at 456, 390 S.E.2d at 314 (inferring knowledge and possession "by virtue of ownership and custody" and buttressing the inference with the defendant's physical presence). "Such ownership is strong evidence of control and 'gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury on a charge of unlawful possession.' " *Id.* at 455, 390 S.E.2d at 314 (quoting *Harvey*, 281 N.C. at 12,

187 S.E. 2d at 714).[2]

When possession is not exclusive, with others having a common right to enter the property, the State must "show other incriminating circumstances before constructive possession may be inferred." *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989) (citation omitted); *see id.* at 695-99, 386 S.E.2d at 188-91 (finding sufficient evidence to go to the jury on the defendant's nonexclusive constructive possession of narcotics found in multi-occupant mobile home when, *inter alia*, a "sales contract" indicated that the defendant had purchased the home, and the defendant was present at the time of the search); *see also State v. Williams*, 307 N.C. 452, 456, 298 S.E. 2d 372, 375 (1983) (finding sufficient evidence of constructive possession "giv[ing] rise to an inference of knowledge and possession" of heroin found in a dilapidated building behind a residence when the mailbox bore the defendant's name and the defendant had been seen at the multi-occupant residence even though he was not present at the time of the search).

Defendants' ownership of the property here gave them the right of exclusive possession, and their exercise of that right, occupying and using the property at the time the marijuana plants were growing, gives rise to an inference that would permit

---

[2] This view of property rights is consistent with our trespass laws. The legal right to enter a property requires consent from the party with the current possessory interest. *See* N.C.G.S. § 14-159.12(a)(1) (2015) (stating that a person commits first-degree trespass if, "without authorization, he enters or remains . . . [o]n premises of another"); *id.* § 14-159.13(a) (2015) (stating that a person commits second-degree trespass if, "without authorization, he enters or remains on premises of another").

a jury to find that defendants constructively possessed the plants. Moreover, here defendants demonstrated their power and intent to exclusively control their property as owners. The officers located the cultivated marijuana plants on roughly one-half acre of defendants' three-acre property in a fenced-in portion of the property adjacent to the yard, accessible by a single gate "right there in front of the house, at the front yard." Officers located the marijuana plants just sixty to seventy yards from that gate, around two hundred feet from the house itself, and approximately ten yards from the maintained lawn area. These facts illustrate that defendants as owners exercised their right to exclude others from the fenced-in property protected by the gated access. As noted by the majority, defendants as the property owners recognized their inherent right to exclude others from their property by explicitly granting access to a third party.

Thus, not only did defendants own the three-acre residential property, but they daily occupied and exercised exclusive control over it. Their status as owners and their exercise of ownership rights constitute substantial evidence of the element of constructive possession, *see Brown*, 310 N.C. at 568-70, 313 S.E.2d at 588-89, particularly when viewed in the light most favorable to the State, *see State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 115 S. Ct. 2565, 132 L. Ed. 2d 818 (1995). While the majority correctly states the standard of review, it nonetheless weighs the facts in favor of defendants to determine that the possession was nonexclusive. When reviewing a motion to dismiss, facts that may

weigh in favor of defendants' nonexclusive possession are reserved for the jury's consideration.

In its application, the majority uses ownership as one factor and glosses over the distinctions between property owners and temporary occupants without clearly differentiating between cases in which the defendant does not own, have a possessory interest in, or occupy the property.[3] Likewise, it fails to distinguish between different types of property uses such as commercial property upon which the owner invites the public. Such an analysis forsakes bedrock property ownership principles and overlooks both defendant property owners' right to control their property and their demonstrated exercise of that right in this case.

Thus, while I agree that the other incriminating circumstances presented here support the State's case against defendants, I would conclude that defendants' ownership of their three-acre residential property, and their demonstrated exercise

---

[3] *Compare Williams*, 307 N.C. at 456, 298 S.E.2d at 375 (finding evidence of permanent residence to be "substantial evidence to raise a reasonable inference that defendant was in constructive possession" of an outbuilding where heroin was found), *and Harvey*, 281 N.C. at 13, 187 S.E.2d at 714 (Evidence placing defendant "within three or four feet of the marijuana within his home," without anyone else in the room, "supports a reasonable inference that the marijuana was in defendant's possession."), *with State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270-71 (2001) (stating that contraband "found on the premises under the control of an accused, . . . in and of itself, gives rise to an inference of knowledge and possession," but requiring a showing of "other incriminating circumstances" to prove a passenger, who had occupied a vehicle for twenty minutes, possessed the cocaine), *and State v. Butler*, 356 N.C. 141, 147-48, 567 S.E.2d 137, 141 (2002) (requiring "additional incriminating circumstances" to establish defendant passenger's constructive possession of cocaine given his nonexclusive control over the taxicab where it was found).

*Newby, J., concurring in the result only*

of exclusive control over it, are sufficient to allow the case to go to the jury. Accordingly, I concur in the result only.

Chief Justice MARTIN and Justice JACKSON join in this concurring opinion.