IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-949

Filed 17 December 2025

Caldwell County, No. 22CR050566-130

STATE OF NORTH CAROLINA

v.

JODY TRAVIS BROWN

Appeal by Defendant from judgment entered 1 December 2023 by Judge Donald Ray Cureton in Caldwell County Superior Court. Heard in the Court of Appeals 28 October 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Julie M. Faenza, for the State-Appellee.*

*Blackrose Law, by Gina Balamucki, for Defendant-Appellant.*

COLLINS, Judge.

This appeal arises out of a criminal conviction for felony possession of stolen goods and attempted misdemeanor larceny. Defendant Jody Travis Brown argues that the trial court erred by denying his motion to dismiss for insufficient evidence. Because the State presented substantial evidence to support the convictions, we affirm the trial court's denial of Defendant's motion to dismiss.

## I.  Background

In February 2022, Jerry and Janice Moses lived on a fifty-acre property in

Caldwell County bordered by the Yadkin River and the Route 321 highway. Their primary residence, 3288 Blowing Rock Boulevard, was located near the front of the property. The property also included a "River House" located at the end of the Moses' driveway. The River House was primarily used for storage. A mower shed sat between the River House and 3288 Blowing Rock Boulevard.

A neighboring home, the "Rock House," abutted the northern end of the Moses' property. The Rock House was rented by Joni and Rodney Nelson. Sundie Plonk occasionally lived at the Rock House with the Nelsons, including in February 2022.

The Moses' property could be accessed through a break in Route 321. Because the entrance did not appear to be a private driveway, motorists would sometimes mistakenly enter the property and promptly exit. These motorists would enter by crossing a short wooden bridge at the property's entrance. The Moseses often recognized unintended visitors by the sound of the bridge's loose wooden boards rumbling twice in quick succession – first when a vehicle entered, and again when it exited.

While home on the evening of 14 February 2022, Mr. Moses heard an initial rumble but not a second. After stepping outside, Mr. Moses did not see any vehicle on their property.

Around 5:00 p.m. the next day, 15 February 2022, Mr. Moses again heard the bridge rumble and looked out the window. He saw and photographed a tan pickup truck with a dent on the right side heading toward Route 321. He saw a person jump

from the ground into the bed of the truck to adjust a tarp covering the back. He could not see any identifying characteristics of the individual who jumped into the truck. The truck departed onto Route 321.

After the truck left, the Moseses checked the River House. They found the house in disarray: lampshades and household items were scattered outside; safe doors were either broken or had a chisel driven in between the top of the safe and its door; and multiple items – including rugs, tools, and a Hitachi air compressor – were missing. Mr. Moses explained that "[i]t looked very much like some thought was given to the items taken, the containers they were placed in, and the general condition of how things were left."

Mr. Moses called law enforcement, who arrived and took a report. Expecting the driver to return, Mr. Moses placed a motion detector on the bridge leading into the property.

Around 10:00 p.m. that night, the detector activated. Mr. Moses stepped outside, asked his wife to call the police, and drove his golf cart towards the River House. The area was in total darkness – the Moseses did not "generally have lights on at night" – but Mr. Moses saw the brake lights of a vehicle near the mower shed backing up to the River House. The vehicle's headlights appeared to be off. Mr. Moses returned to the entrance to meet and guide responding officers to the vehicle.

Mr. Moses watched law enforcement approach the vehicle as it drove away from the River House with its headlights then on. Law enforcement encountered a

dark-colored Mazda sedan driving from the direction of the River House toward Route 321.

Officers stopped the car and identified Defendant as a passenger and Ms. Plonk – who was living at the neighboring Rock House with Mr. and Ms. Nelson – as the driver. The backseat and trunk of the Mazda, registered to Ms. Plonk, were empty. Officers questioned both occupants but allowed them to leave without taking them in for questioning or arrest.

While one officer questioned Ms. Plonk and Defendant, Mr. Moses took the other officer to inspect the River House. No one was inside the River House and, besides the signs of the earlier break in, neither the officer nor Mr. Moses noted anything unusual. The officer and Mr. Moses believed that the River House had not been reentered after law enforcement's earlier inspection.

Law enforcement later learned that the tan truck Mr. Moses had seen in his driveway around 5:00 pm that day belonged to Ms. Nelson. Pursuant to a warrant, officers searched the Rock House and found several items belonging to the Moseses, including the Hitachi air compressor, rugs, and other household goods.

Defendant was indicted for felonious breaking and entering, felonious larceny, and felonious possession of stolen goods.

At trial, Ms. Nelson testified that Ms. Plonk, while living at the Rock House, would occasionally drive Ms. Nelson to and from her doctor's appointments using Ms. Plonk's tan truck. But, on one occasion on or around 14 February 2022, Ms. Plonk

used Ms. Nelson's truck to pick Ms. Nelson up from her doctor's appointment without Ms. Nelson's permission to do so. As for the Moses' goods, Ms. Nelson explained that Ms. Plonk had given Mr. Nelson the Hitachi air compressor as a gift. Otherwise, she did not know how the Moses' property reached the Rock House.

Ms. Nelson further testified that she allowed Ms. Plonk to live at the Rock House starting around Christmas in 2021. Between then and 15 February 2022, Ms. Nelson saw Defendant visit Ms. Plonk at the Rock House on multiple occasions. On one occasion, Ms. Nelson spotted Defendant exiting Ms. Plonk's Rock House room at approximately 3:00 A.M. when someone was knocking on the Rock House's door.

At the close of the State's evidence, Defendant moved to dismiss for insufficient evidence on each of the three charges. The trial court denied Defendant's motion to dismiss. Defendant did not introduce evidence and renewed his motion to dismiss at the close of all evidence. The trial court again denied Defendant's motion to dismiss.

The jury found Defendant not guilty of felony breaking and entering but guilty of felony possession of stolen goods and attempted misdemeanor larceny. The trial court arrested judgment on the attempted misdemeanor larceny conviction and imposed a suspended sentence of four to fourteen months' imprisonment with twenty-four months of supervised probation on the felony possession of stolen goods conviction. Defendant gave oral notice of appeal.

## II.   Discussion

Defendant argues that the trial court erred by denying his motion to dismiss

the felony possession of stolen goods and attempted misdemeanor larceny charges. We disagree.

## A. Standard of Review

"We review the denial of a motion to dismiss for insufficient evidence de novo." *State v. Ingram*, 283 N.C. App. 85, 87 (2022) (citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the trial court." *State v. McVay*, 287 N.C. App. 293, 296 (2022) (citation omitted).

"In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Chekanow*, 370 N.C. 488, 492 (2018) (quotation marks and citations omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Rivera*, 216 N.C. App. 566, 568 (2011) (quotation marks and citation omitted). "[S]o long as the evidence supports a reasonable inference of the defendant's guilt, a motion to dismiss is properly denied even though the evidence also permits a reasonable inference of the defendant's innocence." *State v. Miller*, 363 N.C. 96, 99 (2009) (quotation marks and citation omitted).

"In making its determination, the trial court must consider all evidence admitted . . . in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *Chekanow*,

370 N.C. at 492 (quotation marks and citation omitted). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *Id.* (citation omitted). "Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then 'it is for the jury to decide whether the facts . . . satisfy [the jury] beyond a reasonable doubt that the defendant is actually guilty.'" *Id.* at 379 (quoting *State v. Barnes*, 334 N.C. 67, 75-76 (1993)).

## B. Felonious Possession of Stolen Goods

The elements of N.C. Gen. Stat. § 14-71.1, felony possession of stolen goods, are: "that a defendant (1) possessed personal property; (2) which was stolen pursuant to a breaking or entering; (3) knowing or having reasonable grounds to believe the property was stolen pursuant to a breaking or entering; and (4) acted with a dishonest purpose." *State v. Hester*, 287 N.C. App. 282, 288 (2022) (citations omitted); *see* N.C. Gen. Stat. § 14-71.1 (2023).

### 1. Possession of Personal Property

Possession of personal property may be actual or constructive. *Chekanow*, 370 N.C. at 493. A defendant may constructively possess property where they have "the intent and capability to maintain control and dominion over" the property, even if the defendant does not actually possess it. *Id.* (quotation marks omitted).

The evidence must "provide circumstances linking the contraband specifically to the [d]efendant." *State v. Norris*, 294 N.C. App. 475, 478 (2024) (citation omitted),

*cert. granted* 387 N.C. 435 (2025). If the defendant lacks exclusive control of the location where the property is found, the State must prove additional incriminating circumstances – including suspicious or unusual behavior. *State v. Garrett*, 246 N.C. App. 651, 655 (2016). Evidence that a defendant "regularly visited the premises where the" property was found constitutes an incriminating circumstance which permits an inference of constructive possession. *State v. Rice*, 252 N.C. App. 480, 484 (2017) (citation omitted).

Here, Defendant was the passenger in Ms. Plonk's car without the headlights on as they drove at night through the Moses' unlit property. The car was found on the Moses' property the night after the Moseses suspected a vehicle had entered their property without leaving, and just hours after the break in at the River House. Defendant had previously visited Ms. Plonk on previous occasions at the Rock House. Some of the stolen goods, including the Hitachi air compressor, rugs, and other household goods, were found in the Rock House, where Ms. Plonk was living. This is substantial evidence to support a conclusion that Defendant possessed the property through constructive possession.

### 2. *Stolen Pursuant to a Breaking or Entering*

The second element requires substantial evidence that the property was stolen pursuant to a breaking or entering. *Hester*, 287 N.C. App. at 288. Misdemeanor breaking or entering requires "only proof of the wrongful breaking or entry into any building" for a misdemeanor offense. *State v. Freeman*, 307 N.C. 445, 451 (1983); *see*

*also* N.C. Gen. Stat. §14-54(b) (2023).

The River House was broken into on 15 February 2022 and several items were stolen, including a Hitachi air compressor, rugs, and other household goods. Those items were later found at the Rock House when law enforcement executed a search warrant. This is substantial evidence that the property found at the Rock House was stolen pursuant to a breaking or entering of the River House.

### 3. *Knowing or Having Reasonable Grounds to Believe the Property Was Stolen Pursuant to a Breaking or Entering*

The State must present substantial evidence that the defendant had actual knowledge that the possessed property was stolen or that the defendant had reasonable grounds to believe that the property was stolen. *State v. Parker*, 316 N.C. 295, 303-04 (1986).

Here, Defendant was found without authorization in the Moses' private driveway, mere hours after a breaking and entering. Ms. Plonk drove the car without headlights across the Moses' long, unlit driveway at night. Defendant was known to visit Ms. Plonk, at the neighboring Rock House, where many of the stolen items were later found pursuant to a search warrant. Taken together, these facts provide substantial evidence that Defendant either knew or had reasonable grounds to believe the items were stolen.

### 4. *Acted With a Dishonest Purpose*

The State may prove that a possessor of stolen property acts with a dishonest

purpose by "showing that the possessor acted with an intent to aid the thief, receiver, or possessor of stolen property. . . ." It is sufficient if he intends to assist another wrongdoer in permanently depriving the true owner of his property." *Id.* at 305-06.

Here, Defendant was present without authorization at the Moses' property just hours after a break-in. Defendant was seated in a vehicle which Mr. Moses saw traversing his long driveway at night without the aid of headlights or external lights. Defendant was seated with Ms. Plonk, who was staying at the Rock House where the Moses' personal property was later found. Defendant was known to visit Ms. Plonk regularly. Taken together, these facts provide substantial evidence that Defendant intended to assist Ms. Plonk in permanently depriving the Moseses of their personal property.

Because the State provided substantial evidence of each element of the felonious possession of stolen goods charge, the trial court did not err by denying Defendant's motion to dismiss that charge.

## C. Attempted Misdemeanor Larceny

The elements of attempted misdemeanor larceny are "(1) [a]n intent to take and carry away the property of another; (2) without the owner's consent; (3) with the intent to deprive the owner of his or her property permanently; (4) an overt act done for the purpose of completing the larceny, going beyond mere preparation; and (5) falling short of the completed offense." *State v. Weaver*, 123 N.C. App. 276, 287 (1996).

Defendant contests only the sufficiency of the evidence of the first element –

an intent to take and carry away the property of another. Accordingly, Defendant has waived review of the sufficiency of the evidence to support the remaining elements. *See* N.C. R. App. P. 28(a).

Here, the State presented substantial evidence that Defendant had the intent to take and carry away the Moses' property. Defendant was present without authorization on the Moses' property just hours after a break-in at the River House. Defendant was in a vehicle seen at night driving through the Moses' unlit driveway without its headlights on. Defendant was seated with Ms. Plonk, who was staying at the Rock House where the Moses' property was later found. Defendant was seen visiting Ms. Plonk on prior occasions. These facts provide substantial evidence that Defendant intended to take and carry away the Moses' property.

## III.    Conclusion

Because the State presented substantial evidence of each element of the offenses, we affirm the trial court's denial of Defendant's motion to dismiss.

AFFIRMED.

Judges FLOOD and MURRY concur.