IN THE SUPREME COURT OF NORTH CAROLINA

No. 29PA15

Filed 18 March 2016

STATE OF NORTH CAROLINA

v.

DARRETT CROCKETT

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 767 S.E.2d 78 (2014), finding no error after appeal from a judgment entered on 3 July 2013 by Judge Richard D. Boner in Superior Court, Mecklenburg County. Heard in the Supreme Court on 2 September 2015.

> *Roy Cooper, Attorney General, by Lauren Tally Earnhardt, Assistant Attorney General, for the State.*
>
> *Staples S. Hughes, Appellate Defender, by Barbara S. Blackman, Assistant Appellate Defender, for defendant-appellant.*

HUDSON, Justice.

Defendant Darrett Crockett was convicted on 8 October 1997 of an offense for which he was required to register as a sex offender and comply with the requirements of the North Carolina Sex Offender and Public Protection Registration Program. On 28 November 2011, defendant was indicted on one count of failure to register as a sex offender under N.C.G.S. § 14-208.11; this indictment referred to the period between 24 January 2011 and 6 November 2011. On 12 March 2012, defendant was indicted

on a second count of failure to register as a sex offender; this second indictment referred to the period between 1 December 2011 and 23 February 2012. On appeal to this Court, defendant argues that the trial court erred by denying his motion to dismiss both charges because, he contends, the State failed to present sufficient evidence showing that he committed the offenses as alleged in the indictments. Because we conclude that the State offered sufficient evidence of each offense as alleged in the indictments, we affirm the decision of the Court of Appeals.

## I.  FACTUAL AND PROCEDURAL HISTORY

On 8 October 1997, defendant was convicted of an offense for which he was required to register as a sex offender under N.C.G.S. § 14-208.7(a). He signed the initial registration paperwork at the Mecklenburg County Sheriff's Department on 12 April 1999, and for the next several years, defendant reported changes of address to the Sheriff's Department in compliance with the statutory registration requirements.

On 27 June 2007, defendant provided a written notice to the Department changing his address to 945 North College Street, the address of the Urban Ministry Center, a nonprofit organization that provides services to the homeless. Urban Ministries is open during most business hours, from 8:30 a.m. until 4:00 p.m. on weekdays, and from 9:00 a.m. until 12:30 p.m. on weekends. It provides a range of services and amenities necessary for everyday life, such as food, shower facilities and restrooms, laundry and changing rooms, telephones, transportation, mail services,

and counseling; however, no one lives at the facility, it has no beds, and no one is allowed to spend the night.

From 15 April 2009 until 20 January 2011, defendant was incarcerated in the Mecklenburg County Jail.  Upon his release, defendant declined to sign the "Notice of Duty to Register" form or to provide an address on the form.  Similarly, after his release, defendant did not appear in person at the Mecklenburg County Sheriff's Department, nor did he provide written notice to the Sheriff regarding where he would live.  Rather, the only record the Department received regarding defendant's location upon release was an e-mail sent by the jail stating that he would live at Urban Ministries.[1]

---

[1] According to the trial transcript, the following exchange occurred between the prosecuting attorney and  Laura Stutts, an employee with the Mecklenburg County Sheriff's Office who kept track of sex offender records:

> Q. Anything in your records indicate where he was living at that point, where he was residing once he left jail?
>
> A. The system has that we received an e-mail from [jail] release stating that he was going to live at 945 North College Street, but he didn't list it on the paper.
>
> . . . .
>
> Q. If you're aware, when's the next time the Mecklenburg County Sheriff's Office had any contact with Mr. Crockett?
>
> A. November 8 -- or November 7, 2011.
>
> Q. Do you know what kind of contact that was?
>
> A. When he was arrested.

On 7 November 2011, defendant was arrested again on an unrelated charge and held at the Mecklenburg County Jail for approximately ten days. Upon his release on 17 November 2011, defendant signed a "Notice of Duty to Register" form, on which he again listed 945 North College Street as his address.

Several months later, defendant mailed a letter to the Honorable Yvonne Evans, Resident Superior Court Judge at the Superior Court in Mecklenburg County. This letter, which was signed by defendant, stated in part that "[m]y cousin Gerald Dixon . . . let me live in one of his houses . . . on Orr Dr. in Rock Hill. S.C. where my dog was taken from." The envelope in which the letter was sent indicated that defendant had mailed it on or about 15 February 2012 from the York County Detention Center in South Carolina. But defendant never gave the Mecklenburg County Sheriff's Department any written notice indicating that he was considering moving, or had moved, from Urban Ministries to South Carolina.

Defendant was indicted on 28 November 2011 for failure to register as a sex offender under N.C.G.S. § 14-208.11; this indictment referred to the period between 24 January and 6 November 2011. On 12 March 2012, defendant was indicted on a second count of failure to register under § 14-208.11; this indictment referred to the period between 1 December 2011 and 23 February 2012. In July 2013, defendant was tried in the Superior Court in Mecklenburg County, and the jury found him guilty of both counts on 3 July 2013. Defendant appealed to the Court of Appeals, and, in a

unanimous opinion, the Court of Appeals affirmed defendant's convictions.  On 10

June 2015, we allowed defendant's petition for discretionary review.

## II.  ANALYSIS

The sole issue presented in this appeal is whether the trial court properly

denied defendant's motion to dismiss, which argued that that the State had presented

insufficient evidence showing that defendant had committed the offenses as alleged

in the indictments.  The standard a North Carolina trial court applies to a motion to

dismiss is well settled:

> "In ruling on a motion to dismiss, the trial court need
> determine only whether there is substantial evidence of
> each essential element of the crime and that the defendant
> is the perpetrator.  Substantial evidence is that amount of
> relevant evidence necessary to persuade a rational juror to
> accept a conclusion." In deciding whether substantial
> evidence exists:  "The evidence is to be considered in the
> light most favorable to the State; the State is entitled to
> every reasonable intendment and every reasonable
> inference to be drawn therefrom; contradictions and
> discrepancies are for the jury to resolve and do not warrant
> dismissal; and all of the evidence actually admitted,
> whether competent or incompetent, which is favorable to
> the State is to be considered by the court in ruling on the
> motion."

*State v. Hill*, 365 N.C. 273, 275, 715 S.E.2d 841, 842-43 (2011) (quoting *State v. Mann*,

355 N.C. 294, 301, 560 S.E.2d 776, 781, *cert. denied*, 537 U.S. 1005, 154 L. Ed. 2d 403

(2002), and *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)).  Whether

the State presented substantial evidence of each essential element of the offense is a

question of law; therefore, we review the denial of a motion to dismiss de novo.  *E.g.*,

*State v. Cox*, 367 N.C. 147, 150-51, 749 S.E.2d 271, 274-75 (2013) (citations omitted).

Because defendant challenges both of his convictions for failure to register as a sex

offender under N.C.G.S. § 14-208.11, we will address each in turn.

**A.  Indictment and Conviction for the Period from 24 January 2011**

**through 6 November 2011**

Defendant was indicted for the first count of failure to register under N.C.G.S.

§ 14-208.11 on 28 November 2011.  Subsection 14-208.11(a) lists several distinct

offenses, each of which applies to a different fact pattern, and each of which refers

explicitly or implicitly to other provisions within Article 27A of Chapter 14 of the

North Carolina General Statutes, governing sex offender registration programs.  *See*

N.C.G.S. § 14-208.11 (a) (1) – (10).  Of the provisions to which section 14-208.11 refers,

section 14-208.9 requires an offender who changes address to provide written notice

within three business days after the change of address:

> If a person required to register changes address, the person shall report in person and provide written notice of the new address not later than the third business day after the change to the sheriff of the county with whom the person had last registered.

*Id.* § 14-208.9(a) (2015).  Similarly, section 14-208.7 requires an offender who is

released from a penal institution to register within three business days after his

release:

> A person who is a State resident and who has a reportable conviction shall be required to maintain registration with the sheriff of the county where the person

> resides. . . . If the person is a current resident of North Carolina, the person shall register . . . [w]ithin three business days of release from a penal institution or arrival in a county to live outside a penal institution . . . . "

*Id.* § 14-208.7(a)(1) (2015). However, despite its seemingly plain text, section 14-208.7 appears in context to refer only to *initial* registration requirements. Not only does subsection (a) of that statute apply to offenders who first move to North Carolina from other states, *see id.* § 14-208.7(a) (2015) ("If the person moves to North Carolina from outside this State, the person shall register within three business days of establishing residence in this State, or whenever the person has been present in the State for 15 days, whichever comes first."), and to those who are convicted but receive no active term of imprisonment, *see id.* § 14-208.7(a)(2) ("If the person is a current resident of North Carolina, the person shall register . . . [i]mmediately upon conviction for a reportable offense where an active term of imprisonment was not imposed."), it also refers specifically to "initial county registration," *id.* § 14-208.7(a) ("Registration shall be maintained for a period of at least 30 years following the date of *initial county registration* . . . ." (emphasis added)). In that same vein, subsection (b) specifies what information a sheriff must collect on registration forms, *see id.* § 14-208.7(b) (2015), and subsection (c) directs him to retain the originals, *see id.* § 14-208.7(c) (2015)—all of which suggests that section 14-208.7 applies only to a sex offender's initial registration. As a result of the limited application of section 14-208.7, neither section 14-208.7 nor section 14-208.9 clearly and specifically governs

the situation in which a registered offender who has already been released from confinement for the offense for which he became required to register is later reincarcerated and rereleased.

In light of this ambiguity, different panels of the Court of Appeals have reached different conclusions regarding whether this situation is controlled by section 14-208.7 or by section 14-208.9. Here, for example, the Court of Appeals applied section 14-208.9, the "change of address" statute. *See State v. Crockett*, ___ N.C. App. ___, ___, ___ n.4, 767 S.E.2d 78, 83-84, 84 n.4 (2014) (rejecting defendant's argument that section 14-208.7 applies and applying section 14-208.9 instead). In at least one other case, however, the Court of Appeals concluded that section 14-208.7 applies. *See State v. Barnett*, ___ N.C. App. ___, ___, 768 S.E.2d 327, 331-32 (2015) ("We disagree with the State's interpretation of the statutes in Chapter 14, Article 27A, and hold the State errs in combining the requirements of N.C. Gen. Stat. § 14-208.9(a) governing changes in address with the requirements of N.C. Gen. Stat. § 14-208.7(a) governing registration upon release from a penal institution. It is clear from the language of N.C. Gen. Stat. § 14-208.7(a) that it governs registration upon release from penal institutions."), *rev'd*, ___ N.C. ___, ___ S.E.2d ___ (Mar. 18, 2016) (No. 65PA15).

We now hold that N.C.G.S. § 14-208.9, the "change of address" statute, and not section 14-208.7, the "registration" statute, governs the situation when, as here, a sex offender who has already complied with the initial registration requirements is later

incarcerated and then released. While the statutory provisions themselves may be ambiguous, this decision accords with our decision in *State v. Abshire*, in which we offered a functional definition of the statutory term "address" in the absence of a definition provided by the legislature. *See* 363 N.C. 322, 329-32, 677 S.E.2d 444, 449-51 (2009), *superseded on other grounds by statute*, An Act to Protect North Carolina's Children/Sex Offender Law Changes, ch. 247, Sec. 8(a), 2005 N.C. Sess. Laws (Reg. Sess. 2006) 1065, 1070. Specifically, we opined:

> We conclude that the legislature intended the definition of address under the registration program to carry an ordinary meaning of describing or indicating the location where someone lives. As such, the word indicates what this Court has considered to be a person's residence. . . . . Thus, a sex offender's address indicates his or her residence, meaning the actual place of abode where he or she lives, whether permanent or temporary. Notably, a person's residence is distinguishable from a person's domicile. Domicile is a legal term of art that "denotes one's permanent, established home," whereas a person's residence may be only a "temporary, although actual," "place of abode."
>
> . . . .
>
> . . . [M]ere physical presence at a location is not the same as establishing a residence. Determining that a place is a person's residence suggests that certain activities of life occur at the particular location. Beyond mere physical presence, activities possibly indicative of a person's place of residence are numerous and diverse, and there are a multitude of facts a jury might look to when answering whether a sex offender has changed his or her address. Adding any further nuance to the definition is unnecessary at this time.

*Id.* at 330-32, 677 S.E.2d at 450-51 (quoting *Hall v. Wake Cty. Bd. of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972), *modified*, *Lloyd v. Babb*, 296 N.C. 416, 251 S.E.2d 843 (1979)).[2]  Our holding today regarding the applicability of N.C.G.S. § 14-208.9 accords with this definition and recognizes that the facility in which a registered sex offender is confined after conviction functionally serves as that offender's address.  This interpretation is also consistent with N.C.G.S. § 14-208.5, which indicates that the primary purpose of Article 27A is

> to assist law enforcement agencies' efforts to protect communities by requiring persons who are convicted of sex offenses or certain other offenses committed against minors to register with law enforcement agencies, to require the exchange of relevant information about those offenders among law enforcement agencies, and to authorize access to necessary and relevant information about those offenders to others . . . .

N.C.G.S. § 14-208.5 (2015).

We now turn to the first charge against defendant.  As noted, defendant was first indicted for failure to register on 28 November 2011; that indictment states:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about and between the 24th day of January, 2011 and the 6th day of November, 2011, in Mecklenburg County, Darrett Crockett did unlawfully, willfully and feloniously as a person required by Article 27A of Chapter 14 of the General Statutes of North Carolina to register as a sexual offender, knowingly and

---

[2] We note that this portion of *Abshire* may be read to suggest that whether a particular location can qualify as an offender's "address" is a question of fact for the jury.  But because "address" is a statutory term, the question of whether a particular place could qualify as an "address" is a question of law to be resolved by a judge, not a jury.  The factual question of whether a registered offender changed his address, however, remains the province of the jury.

> with the intent to violate the provisions of said Article, fail to register as a sexual offender in that said defendant, a Mecklenburg County, North Carolina resident, changed his address and failed to provide written notice of his new address no later than three (3) days after the change to the Sheriff's Office in the county with whom he had last registered.

Having resolved the central statutory issue, the key question becomes whether the State provided sufficient evidence tending to show that defendant willfully failed to register as a sex offender as alleged in the indictment.

We conclude that the State did so. The State's evidence tended to show that defendant was incarcerated in the Mecklenburg County Jail from 15 April 2009 until 20 January 2011; that he had previously filled out registration paperwork, which signals that he was aware of his duty to register (although he refused to sign the required form on this occasion); that following his release, he did not provide in-person or written notice that he would reside at Urban Ministries; and that the only written notice the Sheriff's Department received regarding defendant's post-release residence was via an e-mail sent by the jail. Taken in the light most favorable to the State, this evidence was sufficient for the jury to conclude that defendant had willfully failed to provide written notice that he had changed his address from the Mecklenburg County Jail to the Urban Ministry Center. *See also Abshire*, 363 N.C. at 328, 677 S.E.2d at 449 (explaining that the State must prove three essential elements to establish guilt of failure to register: (1) that the defendant was a "person required . . . to register," (2) that the defendant " 'change[d]' his or her 'address,' " and

(3) that the defendant willfully "fail[ed] to notify the last registering sheriff of [the] change of address within the requisite time period" (quoting N.C.G.S. §§ 14-208.11(a), -208(11)(a)(2) and -208.9(a) (2005) respectively)). Accordingly, we affirm defendant's first conviction for failure to register as a sex offender.

**B.  Indictment and Conviction for the Period from 1 December 2011 through 23 February 2012**

Defendant was indicted on 12 March 2012 for the second count of failure to register; that indictment reads:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about and between the 1st day of December, 2011 and the 23rd day of February, 2012, in Mecklenburg County, Darrett Damon Crockett did unlawfully, willfully and feloniously as a person required by Article 27A of Chapter 14 of the General Statutes of North Carolina to register as a sexual offender, knowingly and with the intent to violate the provisions of said Article, fail to register as a sexual offender in that said defendant, a Mecklenburg County, North Carolina resident, changed his address and failed to provide written notice of his new address no later than three (3) days after the change to the Sheriff's Office in the county with whom he had last registered.

Related to this indictment, the State's evidence tended to show that, upon his release from jail on 17 November 2011, defendant signed a "Notice of Duty to Register" form listing the address at which he would reside as "945 N. College St.," the address of Urban Ministries, and that he again provided that address on 17 January 2012. The State's evidence also tended to show, and defendant appears to concede, that he wrote

a letter to Superior Court Judge Yvonne Evans, postmarked 15 February 2012, in which he stated that his cousin let him live in a house in Rock Hill, South Carolina. Finally, the State also provided evidence regarding defendant's history of updating the Sheriff's Department regarding his residence, but none of that evidence indicated that defendant had given written notice that he had moved, or planned to move, to South Carolina in 2012. Taken in the light most favorable to the State, this was sufficient for the jury to find that defendant had willfully changed his address from Urban Ministries to Rock Hill, South Carolina without providing written notice to the Sheriff's Department.

Defendant argues, despite this evidence, that dismissal of this charge was required because the evidence presented at trial did not conform to the allegations in the indictment. Specifically, defendant contends that this indictment alleges that he violated N.C.G.S. § 14-208.9(a) by "fail[ing] to provide written notice" of his change of address within three days *after* the move; however, defendant argues, the evidence showed that he moved out of state, to South Carolina—and that situation, defendant contends, is governed by N.C.G.S. § 14-208.9(b), which requires a registered offender to notify the Sheriff's Department three business days *before* the move. *See* N.C.G.S. § 208.9(b) (2015) ("If a person required to register intends to move to another state, the person shall report in person to the sheriff of the county of current residence *at least three business days before the date the person intends to leave this State* to establish residence in another state or jurisdiction." (emphasis added)). To hold

otherwise and apply section 14-208.9(a) to defendant's out-of-state move, defendant suggests, would lead to the absurd result of requiring an offender who has already moved out of state—even to a distant state—to return to North Carolina to report in person and provide written notice of the address change.

Defendant's argument is unavailing. The plain text of section 14-208.9(a) states in full:

> If a person required to register changes address, the person shall report in person and provide written notice of the new address not later than the third business day after the change to the sheriff of the county with whom the person had last registered. If the person moves to another county, the person shall also report in person to the sheriff of the new county and provide written notice of the person's address not later than the tenth day after the change of address. Upon receipt of the notice, the sheriff shall immediately forward this information to the Department of Public Safety. When the Department of Public Safety receives notice from a sheriff that a person required to register is moving to another county in the State, the Department of Public Safety shall inform the sheriff of the new county of the person's new residence.

*Id.* § 14-208.9(a). Though the text of this section is, as defendant notes, focused on in-state changes of address, there is nothing in the plain text limiting its operation or effect to in-state address changes, or precluding its application to out-of-state address changes. And there is no need to depart from the plain text because giving effect to that plain text is not likely to lead to absurd results: When a registered offender plans to move out of state, appearing in person at the Sheriff's Department and providing written notification three days *before* he intends to leave, as required

by subsection 14-208.9(b), would appear to satisfy the requirement in subsection 14-208.9(a) that he appear in person and provide written notice *not later than* three business days *after* the address change. *Compare id.* § 14-208.9(a) *with id.* § 14-208.9(b). Therefore, the scenario defendant envisions, in which a registered offender moves out of state and is required by law to return to North Carolina to notify the Sheriff's Department with which he last registered of that move, will likely occur only when the registered offender moves out of state without having at least a few days of advance notice. Because there is no reason to believe that such situations will be common, we see no need to depart from the plain text of the statute. Accordingly, we affirm defendant's second conviction for failure to register as a sex offender.

### III. CONCLUSION

In conclusion, we hold that the State presented sufficient evidence which, when taken in the light most favorable to the State, would allow a jury to convict defendant of the offenses as alleged in the indictments. On this basis, we affirm the decision of the Court of Appeals.[3]

AFFIRMED.

---

[3] Because we affirm the Court of Appeals on this basis, we do not address its alternate basis for affirming defendant's convictions, namely, its conclusion that the "Urban Ministry is not a valid address at which Defendant could register in compliance with the sex offender registration statute because Defendant could not *live* there." *Crockett*, 767 S.E.2d at 84 (emphasis in original).