IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-264

No. COA21-687

Filed 19 April 2022

Rowan County, No. 17CRS053730

STATE OF NORTH CAROLINA

v.

ERIC ANTRON INGRAM

Appeal by Defendant from judgment entered 29 June 2021 by Judge William A. Wood, II, in Rowan County Superior Court. Heard in the Court of Appeals 6 April 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Mary S. Crawley, for the State-Appellee.*

*Hynson Law, PLLC, by Warren D. Hynson, for Defendant-Appellant.*

COLLINS, Judge.

¶ 1 Defendant Eric Antron Ingram appeals from judgment entered upon the jury's verdict of guilty of driving while impaired. Defendant argues that the trial court erred by denying his motion to dismiss because the State presented insufficient evidence that he drove a vehicle, as required by N.C. Gen. Stat. § 20-138.1(a). Because the State presented circumstantial evidence sufficient to establish that Defendant drove a moped on the morning in question, there was no error in the trial

court's denial of Defendant's motion to dismiss.

## I.    Background

On 2 August 2017, Defendant was cited for driving a moped while impaired. Defendant was found guilty following a bench trial in district court and appealed to superior court, where he was tried before a jury.

The evidence at trial tended to show the following:  on the morning of 2 August 2017, Chief Benjamin Grubb of the Spencer Fire Department responded to a call for a "motorcycle wreck" on a "pretty well-traveled stretch of roadway" in Spencer.  Grubb estimated that firefighters arrived at the scene "within five minutes of the initial call."  Upon arriving, Grubb saw Defendant in the road on a moped that was lying on its side on top of the double yellow line.  According to Grubb, Defendant was wearing a helmet and "sitting on the seat" of the fallen moped with one of his legs underneath it.  Grubb did not see any debris or tire marks in the road, rips in Defendant's clothing, or damage to the moped or Defendant's helmet.

Defendant was unresponsive, his eyes were closed, and he was not talking or moving when the firefighters first approached him.  They "[s]tarted shaking" Defendant and "got him to wake up a little bit."  Defendant stated that he was not injured; Grubb did not observe any injuries on him.  Grubb described Defendant as "lethargic at first" but explained that he "woke up more" as the firefighters continued speaking with him.  Grubb could smell a strong odor of alcohol "once [Defendant] got

up and started talking[.]"  The firefighters were able to "pick the moped up off of" Defendant but Grubb could not recall if the moped was hot to the touch or if there were keys in it.

¶ 5        Officer Tyler Honeycutt of the Spencer Police Department arrived at the scene shortly after the firefighters.   When Honeycutt approached, he observed the firefighters "in the process of picking the moped up" and saw that one of Defendant's legs was partially underneath the moped.  Like Grubb, Honeycutt did not see any debris or tire marks in the road, rips in Defendant's clothing, damage to the moped or Defendant's helmet, or injuries to Defendant's person.  Honeycutt could not recall if there were keys in the moped.

¶ 6         Honeycutt began speaking with Defendant once Defendant stood up. Honeycutt "detected a strong odor of alcohol" coming from Defendant and noticed that Defendant had "[b]loodshot, glassy -- red, glassy eyes also."  According to Honeycutt, Defendant "stated that he had drank earlier" and "said it was a couple of beverages earlier in the morning."

¶ 7        Honeycutt had Defendant perform a "walk and turn" test, which requires the subject to take nine steps along a straight line, turn around, and complete nine more steps along the line.  Defendant interrupted Honeycutt's instructions and began the test early, despite being told not to do so.  After Honeycutt fully explained the test, Defendant attempted to walk the straight line but started over.   On his second

attempt, Defendant "made it to nine steps, but stepped off the line, was swaying, unable to keep heel-to-toe." Honeycutt also had Defendant perform a "one-legged stand," which requires the subject to "raise their foot approximately six inches off the ground with their toes pointed out," "[k]eep their arms by their side and look towards their foot," and count. During the one-legged stand, Defendant "began to sway and . . . attempt to use his arms for balance." Honeycutt formed the opinion that Defendant had consumed a sufficient amount of an impairing substance to appreciably impair his mental or physical faculties or both.

¶ 8        Following Defendant's refusal to perform an Intoxilyzer breath test, Honeycutt obtained a warrant for a blood sample. Honeycutt testified that once at the hospital, Defendant "advised that he would be stupid willingly giving blood" and claimed that "someone laid [the moped] on top of him." Honeycutt requested that a sample of Defendant's blood, which was drawn by a nurse, be tested by the State Crime Lab.

¶ 9        Danielle O'Connell, a forensic scientist in the toxicology section of the State Crime Lab, tested Defendant's sample and determined that his blood ethanol concentration was 0.29 grams of alcohol per 100 milliliters.

¶ 10        The trial court denied Defendant's motion to dismiss at the close of the State's evidence. Defendant did not present evidence and the trial court denied Defendant's renewed motion to dismiss. The jury found Defendant guilty of driving while

impaired and the trial court sentenced Defendant to a term of 15 months in the

Misdemeanant Confinement Program. Defendant gave notice of appeal in open court.

## II. Discussion

Defendant argues that the trial court erred by denying his motion to dismiss.

We review the denial of a motion to dismiss for insufficient evidence de novo. *State*

*v. Crockett*, 368 N.C. 717, 720, 782 S.E.2d 878, 881 (2016). Upon a motion to dismiss,

"the question for the [c]ourt is whether there is substantial evidence (1) of each

essential element of the offense charged, or of a lesser offense included therein, and

(2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C.

373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

> In reviewing challenges to the sufficiency of evidence, we
> must view the evidence in the light most favorable to the
> State, giving the State the benefit of all reasonable
> inferences. Contradictions and discrepancies do not
> warrant dismissal of the case but are for the jury to resolve.
> The test for sufficiency of the evidence is the same whether
> the evidence is direct or circumstantial or both.
> Circumstantial evidence may withstand a motion to
> dismiss and support a conviction even when the evidence
> does not rule out every hypothesis of innocence. If the
> evidence presented is circumstantial, the court must
> consider whether a reasonable inference of defendant's
> guilt may be drawn from the circumstances.

*Fritsch*, 351 N.C. at 378-79, 526 S.E.2d at 455 (quotation marks and citations

omitted).

¶ 12     N.C. Gen. Stat. § 20-138.1(a) provides that

> [a] person commits the offense of impaired driving if he
> drives any vehicle upon any highway, any street, or any
> public vehicular area within this State:
>
> (1)     While under the influence of an impairing
>         substance; or
>
> (2)     After having consumed sufficient alcohol that he
>         has, at any relevant time after the driving, an
>         alcohol concentration of 0.08 or more.  The results
>         of a chemical analysis shall be deemed sufficient
>         evidence to prove a person's alcohol concentration;
>         or
>
> (3)     With any amount of a Schedule I controlled
>         substance, as listed in [N.C. Gen. Stat. §] 90-89, or
>         its metabolites in his blood or urine.

N.C. Gen. Stat. § 20-138.1(a) (2017).

¶ 13     Defendant does not dispute the sufficiency of the evidence that he was on a

highway, street, or public vehicular area within this state; that he was "under the

influence of an impairing substance"; or that he had "consumed sufficient alcohol that

he ha[d] . . . an alcohol concentration of 0.08 or more." *Id.*  Defendant challenges only

the sufficiency of the evidence that he drove the moped.  "A person 'drives' within the

meaning of the statute if he is 'in actual physical control of a vehicle which is in

motion or which has the engine running.'"  *State v. Hoque*, 269 N.C. App. 347, 353,

837 S.E.2d 464, 470-71 (2020) (quoting N.C. Gen. Stat. § 20-4.01(7) and (25)).

¶ 14    No witness testified to seeing Defendant in physical control of the moped while it was in motion or its engine was running. Nonetheless, the State presented sufficient circumstantial evidence to establish that Defendant drove the moped. Two first responders testified that Defendant was found alone, wearing a helmet, lying on the double yellow line in the middle of a road and mounted on the seat of the fallen moped while it rested on top of one of his legs. There was no testimony that any other person who might have driven the moped was at the scene of the accident. Viewing this evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference, as we must, this evidence is sufficient to establish that Defendant was in actual physical control of the moped while it was in motion or had the engine running. *See id.*

¶ 15    Defendant emphasizes that he was not injured, there was no debris and were no tire marks in the road, there was no evident damage to the moped or his helmet, the moped was not running when Defendant was found, and there was no evidence that the moped was hot to the touch or that a key was in the moped or on Defendant's person. These points are appropriately addressed to the jury, which is charged with weighing whether the evidence proved Defendant's guilt beyond a reasonable doubt. They do not, however, foreclose the reasonable inference from the State's evidence that Defendant had recently driven the moped. *See State v. Campbell*, 359 N.C. 644, 682, 617 S.E.2d 1, 24 (2005) ("If the evidence supports a reasonable inference of

defendant's guilt based on the circumstances, then it is for the jurors to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." (quotation marks, citations, and brackets omitted)).

¶ 16       Defendant also contends that this case is "squarely controlled" by *State v. Ray*, in which this Court held that the circumstantial evidence was insufficient to establish the defendant drove a crashed car. 54 N.C. App. 473, 475, 283 S.E.2d 823, 825 (1981). In *Ray*, the only evidence the defendant drove the car was that the defendant was found "approximately halfway in the front seat, between the driver and passenger area in the front seat." *Id.* at 473, 283 S.E.2d at 824. There was no evidence that "the car had been operated recently," was "in motion at the time the officer observed the defendant," was owned by the defendant, had its motor running when the officer arrived, or that "the defendant was seen driving the car at some point immediately prior." *Id.* at 475, 283 S.E.2d at 825.

¶ 17       Contrary to Defendant's assertion, *Ray* is readily distinguishable. First, this case concerns a moped, not a multiple-occupant car as in *Ray*. Furthermore, the uncontradicted evidence was that Defendant was alone at the scene and was wearing a helmet, lying in the middle of a road, and not merely near the moped but straddling the seat of the fallen moped that was lying on top of one of his legs. This evidence amply supports the inference that Defendant drove the moped.

### III.   Conclusion

Because the State presented sufficient evidence of each element of the offense of driving while impaired, the trial court did not err by denying Defendant's motion to dismiss.

NO ERROR.

Judges ARROWOOD and JACKSON concur.