IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-141

No. 18A22

Filed 16 December 2022

STATE OF NORTH CAROLINA

v.

MICHAEL CONNOR LAMP

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 281 N.C. App. 138, 2021-NCCOA-698, finding no reversable error in a judgment entered on 19 December 2019 by Judge Joseph N. Crosswhite in Superior Court, Iredell County. Heard in the Supreme Court on 20 September 2022.

*Joshua H. Stein, Attorney General, by Deborah M. Greene, Assistant Attorney General, for the State.*

*Mark L. Hayes for defendant-appellant.*

HUDSON, Justice.

¶ 1 This case is about the sufficiency of evidence indicating intent, as specified in N.C.G.S. § 14-208.11(a)(4). Defendant Michael Connor Lamp, a registered sex offender, is required to report his address to the sheriff of his county of residence. He was charged with submitting incorrect address information to the sheriff "willfully" and "under false pretenses." Defendant moved to dismiss the charges on grounds that the State's evidence was insufficient to show the requisite intent to deceive. Over

defendant's objections, the trial court allowed the case to go to the jury, and the jury returned a verdict of guilty of failure to comply with the sex offender registry. Defendant appealed the denial of his motion to dismiss, but a divided Court of Appeals affirmed his conviction. *State v. Lamp*, 281 N.C. App. 138, 2021-NCCOA-698. Before this Court defendant maintains that the State did not introduce sufficient evidence of the requisite intent. We agree. Accordingly, we reverse the decision of the Court of Appeals.

## I.    Factual and Procedural Background

¶ 2        Defendant, a registered sex offender since his 1999 conviction for a sex offense at age seventeen, is required to report his address to the sheriff of the county where he resides. When a registrant like defendant moves to a different location, the law requires him to report his address change in person at the local sheriff's office within three business days. N.C.G.S. § 14-208.9 (2021). All registrants, including those who have not moved, must also verify their address twice a year by appearing at the sheriff's office in person. *Id.* § 14-208.9A(a) (2021). Iredell County has an additional requirement for homeless registrants: they must appear in person at the sheriff's office every Monday, Wednesday, and Friday to sign a check-in log.

¶ 3        In June 2019, Defendant registered as homeless with the Iredell County Sheriff's Office. On Friday, 21 June 2019, Defendant moved into a friend's apartment. Because he was no longer homeless, he was no longer subject to Iredell County's

thrice-weekly homeless check-in policy. Per N.C.G.S. § 14-208.9(a), defendant had three business days to report this address change to the sheriff; however, before visiting the sheriff's office to report his new address, defendant learned that the apartment was under eviction and the sheriff's office was coming to change the locks on the morning of Wednesday, 26 June. In sum, defendant switched from homeless to housed on Friday, 21 June, and then back to homeless again sometime before 10:00 a.m. on Wednesday, 26 June.

¶ 4    Defendant timely reported all these changes in person at the sheriff's office on Tuesday, 25 June 2019. As Detective-Sergeant Dyson testified, when a registrant changes their address they must speak with a deputy in person at the sheriff's office. The deputy provides the needed paperwork for the registrant to fill out. Defendant reported the apartment address as "1010 Foxcroft Ln Building # 604 Apt. # A6 Statesville N.C. 28677." The form provided by the sheriff's office has a space to indicate the first effective date, which defendant listed as Friday, 21 June. But the form does not have a space to indicate a last effective date. Instead, registrants are expected to submit superseding information to indicate that previously reported information is outdated. During that same in-person report at the sheriff's office, defendant did just that by signing the provided homeless check-in log to represent that he did not have a fixed address.

¶ 5   On 26 June 2019, Deputy Cody James attempted to verify the outdated apartment address defendant had provided. Deputy James did not know that defendant had signed the homeless check-in log to indicate that he did not live at the Foxcroft Apartments. Additionally, the deputy did not go to the address defendant had given—1010 Foxcroft Ln—and instead knocked on the door of a nearby apartment with a similar address: 604 Foxcroft Terrace Apt. A6. Defendant did not answer that door, and Deputy James inferred that defendant did not live there. Deputy James also spoke with the property manager for the apartment complex. The property manager stated that the previous day, Tuesday, 25 June, she knocked on the door to 602 Foxcroft Terrace Apt. A6 and defendant answered. Deputy James then went to and knocked on that door, but no one answered. Deputy James did not try calling defendant's cell phone.

¶ 6   Deputy James then concluded that "Defendant deceptively provided a false address to the sex offender registry and that Defendant was someone who acted as though he did not want to be supervised." As a result, on 27 June 2019, Deputy James swore out a warrant alleging, among other things, that defendant willfully failed to register "by providing false information . . . stating his address was 604 Foxcroft Terrace Apt A6 when he was actually residing [at] 602 Foxcroft Terrace Apt A2." In fact, defendant never submitted either of these two addresses, and Deputy James later admitted at trial that he made a mistake when typing up the warrant.

Nevertheless, the warrant was issued, and defendant was arrested on 30 June 2019. The following day, Deputy James returned to the apartment complex to formally take the apartment manager's statement.

¶ 7          At trial, Deputy James testified that he believed defendant did not live at 604 Foxcroft Terrace Apt. A6 because someone other than defendant came to the door and spoke with him. Before Deputy James could describe that conversation, defense counsel immediately objected that those out-of-court statements were hearsay, and the court sustained the objection.

¶ 8          Later, Deputy James testified that he believed defendant was trying to trick him, even though Deputy James never spoke to defendant during the investigation. When asked to elaborate, Deputy James stated, "During the time in which [defendant] was homeless he would have to come in and check in. He would always make his check-ins near 5:00 [p.m.], which led me to believe he didn't wish to be supervised."

¶ 9          The prosecution tried to introduce evidence of defendant's past failures to report address changes to substantiate the State's claim that defendant intended to deceive in this case, but the trial court excluded that evidence.

¶ 10          Defendant moved to dismiss the charges for insufficient evidence. When arguing on the motion to dismiss, the State summarized its evidence on intent as follows:

In the light most favorable to the State, with regard to the deceit, I think there's evidence that the defendant had previously registered as homeless. It was a requirement that homeless offenders come sign in on Monday, Wednesday, and Friday. That requirement did not exist for someone who had an address. And this defendant I think was in a tough spot because he couldn't say he was homeless because he just talked to this woman who was the manager of the apartment complex and she knew that he was living in that apartment. He knew the Iredell County Sheriff's Office was coming the next day to padlock it. The Iredell County Sheriff's Office handles the eviction. Iredell County Sheriff's Office handles the registry. He knew somebody was going to know that he was living there so he had to come. He couldn't say he was homeless.

He gave an address. He moved from the address where he actually was going to be padlocked the next day so he gave this address of Building 604, Apartment A6. That would buy him some time until he could figure out what he was going to do next, and it wouldn't require him to come in on Monday, Wednesday, and Friday to check in because he wasn't registered as homeless, he actually provided an address. And I think that's circumstances that are sufficient in the light most favorable to the State to show deceit.

The motion to dismiss was denied. Defendant neither testified nor presented any evidence. Defendant renewed his motion to dismiss at the close of all evidence, and the motion was again denied.

¶ 11   After deliberating for some time, the jury asked for clarification on the definition of intent to deceive. The trial court reread the jury instructions and provided the following definition of intent:

Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proven by circumstances from which it may be inferred. You arrive at the intent of a person by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would ordinarily draw therefrom.

Thank you, guys. We'll let you return and continue your deliberations.

[Jury exited the courtroom at 5:05 p.m.]

[Jury deliberations continue.]

THE COURT: I don't think that definition of intent clarifies anything. I mean, that is just --

[DEFENSE COUNSEL]: It's a lot of verbiage.

THE COURT: It is.

[THE STATE]: It's a lot of verbiage.

The jury returned a verdict of guilty of failure to comply with the sex offender registry. Defendant then pleaded guilty to attaining habitual felon status. The judgments were consolidated, and defendant was sentenced to a prison term of 101 to 134 months. Defendant gave notice of appeal in open court.

¶ 12    The Court of Appeals held that the trial court properly denied defendant's motion to dismiss. *Lamp*, 2021-NCCOA-698, ¶ 10. The Court of Appeals identified six specific pieces of evidence that, from its viewpoint, allowed for the reasonable inference that defendant willfully misrepresented his address with the intent to deceive the sheriff's office:

(1)  [O]n 25 June 2019, Defendant represented both that he resided at 1010 Foxcroft Lane, Building 604, Apartment A6, and that he was homeless—two things that could not both be true;

(2)  [T]hat very same day, Defendant was seen at Building 602, Apartment A6, not Building 604, Apartment A6, where he represented to the Sheriff's Office he resided, suggesting that he did not, in fact, reside in Building 604 despite representing that he did (but which could also tend to show that he resided in neither place, and was homeless on 25 June 2019); and

(3)  [O]n 26 June 2019, an occupant of the apartment where Defendant claimed he lived informed a deputy that Defendant did not live there; and

[(4)]  [P]roviding an incorrect address on the forms used by the Sheriff's Office to record and monitor compliance with the requirement to register is a misrepresentation that constitutes circumstantial evidence of deceptive intent[; and]

[(5)]  The jury also heard directly from Deputy James that [he] believed the Defendant was trying to trick [him] and avoid supervision by providing an incorrect address[; and]

[(6)]  The jury also heard of a potential motive that by providing an address on 25 June 2019, this gave Defendant an excuse from signing the homeless log on 21 June 2019 and 24 June 2019.

*Id.* ¶¶ 13–14.

Judge Dillon dissented. He would have held that the evidence did not support a reasonable inference of deceptive intent. *Id.* ¶ 17 (Dillon, J., dissenting). Judge Dillon emphasized that "it is not enough for the State to produce evidence showing

that Defendant registered a false address or even that he did so *knowingly.*" *Id.* ¶ 20. Instead, the State needed to "produce evidence that raises at least 'a reasonable inference' that Defendant acted *willfully, under false pretenses.*" *Id.* The State's theory of the case was that defendant "misreported to deceive the Sheriff's Office into thinking that he was living in Building 604 indefinitely" so that he could avoid supervision. *Id.* ¶ 24. But, as noted by the dissenting judge, "the State's own evidence offered at trial **conclusively** belies the State's theory." *Id.* ¶ 24. In fact, State's Exhibit 5 "showed that Defendant informed the Sheriff's Office that he no longer lived in any apartment unit by signing the homeless log." *Id.* In sum, Judge Dillon concluded that the evidence in the record did not support the State's theory of the case or any other potential motive to deceive.

¶ 14    Defendant appealed to this Court as a matter of right on the basis of the dissenting opinion.

## II.    Analysis

¶ 15    Here, defendant contends that the trial court erred in denying his motion to dismiss and presents two general arguments. First, defendant argues that he has been improperly convicted for providing an incorrect *old* address, when the statute only requires providing a *new* address. Second, defendant argues that the State's theory of deceptive intent is not supported by the evidence and, moreover, is patently unreasonable. We disagree with defendant's first argument but are persuaded by the

second. The record here does not contain sufficient evidence of deceptive intent, and the motion to dismiss should have been allowed. Accordingly, we reverse the decision of the Court of Appeals.

## A. Standard of Review

"This Court reviews the decision of the Court of Appeals to determine whether it contains any errors of law." *State v. Melton*, 371 N.C. 750, 756 (2018) (citations omitted). "In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *Id.* (quoting *State v. Chekanow*, 370 N.C. 488, 492 (2018)). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.* (quoting *Chekanow*, 370 N.C. at 492). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *Id.* (quoting *Chekanow*, 370 N.C. at 492). "Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *Id.* (quoting *Chekanow*, 370 N.C. at 492). Questions of statutory interpretation are questions of law, and they are also reviewed de novo. *E.g.*, *JVC Enters., LLC v. City of Concord*, 376 N.C. 782, 2021-NCSC-14, ¶ 8.

**B. "New Address" Reporting Requirement**

¶ 17      North Carolina law requires that "[i]f a person required to register changes address, the person shall report in person and provide written notice of the new address." N.C.G.S. § 14-208.9(a). Defendant was charged with violating N.C.G.S. § 14-208.11(a)(4), which declares an individual who "[f]orges or submits under false pretenses the information or verification notices required under this Article" guilty of a Class F felony. *Id.* § 14-208.11(a)(4) (2021).

¶ 18      Defendant argues that "new address" should receive a peculiar construction. Imagine a person moves from address A to address B, their "new" address. But, before they report this change to the sheriff's office within three business days, they move again, to address C. Defendant argues that only address C is a "new" address, and that address B is an "old" address that does not need to be reported. In response, the State argues that addresses B and C are both "new" addresses, and both must be reported.

¶ 19      We are convinced by the State's argument on this point. Read in context, we conclude that the word "new" refers to addresses that have not already been reported to the sheriff. This reading gives meaning to the explicit purpose of the law: "[T]o assist law enforcement agencies' efforts to protect communities." *Id.* § 14-208.5 (2021). Law enforcement is better able to protect communities when it has a complete and accurate record of where a sex offender has lived. We reject defendant's suggested

interpretation as inconsistent with this stated purpose because this interpretation would allow sex offenders to submit false or incomplete information about places they have lived while subject to the reporting requirement.

## C. Evidence of Deceptive Intent

¶ 20        Nevertheless, we agree with defendant that the evidence presented at trial is insufficient to support an inference of deceptive intent. Intent is an essential element of the crime charged, and the State must put on "that amount of relevant evidence necessary to persuade a rational juror" of defendant's criminal intent. *State v. Crockett*, 368 N.C. 717, 720 (2016) (quoting *State v. Hill*, 365 N.C. 273, 275 (2011)). "Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Bell*, 285 N.C. 746, 750 (1974) (citations omitted), *overruled in part on other grounds by State v. Collins*, 334 N.C. 54, 61–62 (1993). On a motion to dismiss, "[i]f the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances." *State v. Fritsch*, 351 N.C. 373, 379 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75 (1993)). All evidence is viewed in the light most favorable to the state. *Id.* at 378–79 (citation omitted). However, unreasonable inferences, suspicion, conjecture, and mere speculation do not save a case from a motion to dismiss. *Id.* at 378 (citing *Barnes*, 334 N.C. at 75).

¶ 21 The heightened level of intent required by the statute is no accident. The General Assembly amended the sex offender registration law in 2006 and, among other things, increased the required level of intent so that only "willful" registration violations were criminalized. An Act To Protect North Carolina's Children/Sex Offender Law Changes, S.L. 2006-247, § 8, 2005 N.C. Sess. Laws (Reg. Sess. 2006) 1065, 1070–71 (amending N.C.G.S. § 14-208.11). The word "willful," when used in a criminal statute, "means something more than an intention to do a thing." *State v. Dickens*, 215 N.C. 303, 305 (1939) (quoting *State v. Whitener*, 93 N.C. 590, 592 (1885)). Willfulness requires doing an act "purposely and deliberately in violation of law." *State v. Ramos*, 363 N.C. 352, 355 (2009) (quoting *State v. Arnold*, 264 N.C. 348, 349 (1965) (per curiam)). Additionally, "[f]alse pretense occurs when one makes an untrue representation to another that is calculated and intended to deceive." *State v. Parks*, 147 N.C. App. 485, 489 (2001) (citation omitted).

¶ 22 While our law no longer strictly forbids stacking inferences upon each other, *State v. Childress*, 321 N.C. 226, 232 (1987), in this case the link between the circumstances proved by direct evidence and the inferences drawn from these circumstances stretches too far. We consider each fact relied upon by the Court of Appeals in turn.

¶ 23 First, it is certainly possible for one to have two addresses in the same day. A change of address is not a delayed transformation that kicks in only at the stroke of

midnight. *See State v. Worley*, 198 N.C. App. 329, 338 (2009) ("[T]he sex offender registration statutes operate on the premise that everyone does, *at all times*, have an 'address' of some sort, even if it is a homeless shelter, a location under a bridge or some similar place." (emphasis added)). No intent to deceive can be inferred from defendant's representation that he had different addresses in the morning and the evening. This is what any person would say on moving day. Moreover, the sex offender change of information form provided by the sheriff does not have a space to indicate the last effective date for an address. Instead, registrants must indicate that a provided address is outdated by submitting new, superseding information. The forms defendant submitted are consistent with reporting a past address that is still "new" to the sheriff's office.

¶ 24    Second, the fact that defendant was seen in Building 602 once does not give rise to any inference regarding where defendant lived. "[M]ere physical presence at a location is not the same as establishing a residence." *Crockett*, 368 N.C. at 723 (alteration in original) (quoting *State v. Abshire*, 363 N.C. 322, 332 (2009)). The jury must look "[b]eyond mere physical presence" to "activities possibly indicative of a person's place of residence." *Id.* (quoting *Abshire*, 363 N.C. at 332). Here, the apartment manager did testify that she saw defendant in Building 602, but she also testified that she saw him there only once, and that he had no written lease, did not

claim to live there, and merely stated that "we'll be out by morning." This evidence is too speculative to establish that defendant lived in Building 602.

¶ 25      Third, the Court of Appeals majority relied on insufficient evidence when it considered that "an occupant of the apartment where Defendant claimed he lived informed a deputy that Defendant did not live there." *Lamp*, 2021-NCCOA-698, ¶ 13. Defendant objected to these statements at trial and they were never heard by the jury. The only evidence the jury heard was Deputy James's testimony that defendant did not answer the door. But at that point in time, defendant had already informed the sheriff's office that he no longer resided at Foxcroft Apartments and was homeless again. Failing to answer the door at an old address does not support an inference that defendant had never resided at that address. *Cf. Crockett*, 368 N.C. at 723 (noting that mere presence does not indicate residence, suggesting that mere absence does not indicate non-residence).

¶ 26      Fourth, there is no evidence in the record that defendant provided an incorrect address. As discussed above, all the evidence offered by the State as to who lived in Building 604 was excluded and never presented to the jury. All the jury was told is that defendant did not answer the door after his reported move out date. Even if misrepresentations can serve as circumstantial evidence of deceptive intent, there is no evidence in this record that defendant misrepresented his address.

¶ 27          Fifth, Deputy James's testimony does not raise an inference of deceptive intent. Deputy James conceded that he did not know defendant had signed the homeless check-in log on 25 June. Moreover, the deputy testified that he concluded defendant was being deceptive because defendant *completed the check-in process* around 5:00 p.m. each time. Evidence of regular compliance with the law is hardly substantial evidence of a calculated plan to willfully violate the law.

¶ 28          Finally, the State's motive theory is illogical. According to the State, defendant knew that he needed to provide an address, and "couldn't say he was homeless," and so he lied and gave a false address to buy time. But this theory does not add up. First, defendant *said he was homeless* when he signed the homeless check-in log. Second, if defendant really lived in Building 602 and had just been evicted, there would be no apparent reason to lie and say that he lived in Building 604. Reporting an accurate old address would have explained why defendant did not show up for the homeless check-ins on 21 and 24 June. Finally, the fact that defendant signed the homeless check-in log, thus voluntarily assuming the burden of checking in three times a week moving forward, utterly fails to support any inference that he was trying to avoid this burden.

### III.    Conclusion

¶ 29          Here, even viewed in the light most favorable to the State, the evidence in the record is insufficient to support an inference that defendant willfully provided

information under false pretenses. Accordingly, we reverse the Court of Appeals'

decision upholding defendant's conviction for violating N.C.G.S. § 14-208.11(a)(4);

without this conviction, there is no substantive offense to support a finding of

habitual felon status. We therefore remand this case to the Court of Appeals for

further remand to the trial court with instructions to vacate defendant's conviction

for failure to comply with the sex offender registry and the resulting judgment

entered by the trial court.

REVERSED AND REMANDED.

Justice BARRINGER dissenting.

The issue in this case is whether the State failed to present evidence from which a reasonable inference may be drawn that defendant had the requisite intent to willfully deceive when he gave an incorrect address to the police. When viewing the evidence in the light most favorable to the State, the State presented substantial evidence by which a reasonable jury could conclude that there was sufficient evidence of defendant's guilt. However, the majority applies the wrong standard of review by erroneously reweighing—and manufacturing—their own version of the facts in the light most favorable to defendant and taking the case out of the hands of the jury. Therefore, I respectfully dissent.

## I.    Background

On 19 April 2001, defendant was convicted of attempted second-degree kidnapping of a minor and was required to register as a sex offender. *See* N.C.G.S. § 14-208.6(1m) (2021); N.C.G.S. § 14-208.6A (2021). Defendant had been registered as a sex offender without address and had previously signed the Sex Offender Without Address Check-In Log (homeless log). He signed the log on 12 June 2019. On 25 June 2019, defendant reported his address as 1010 Foxcroft Lane, Building 604, Apartment A6. The same day, defendant signed the Sex Offender Without Address Check-In Log representing that he did not have an address.

The next day, Deputy Cody James performed a sex-offender compliance check

at 1010 Foxcroft Lane, Building 604, Apartment A6. Another man opened the door, and Deputy James did not see anyone else at the apartment. Deputy James then spoke to the apartment manager, who later provided a written statement regarding her previous interactions with defendant. Roughly two months later, a grand jury indicted defendant for submitting under false pretenses the information required by the Sex Offender and Public Protection Registration Program. *See* N.C.G.S. § 14-208.11(a)(4) (2021).

¶ 33        Remarkably, the majority states that Deputy James performed a compliance check at "604 Foxcroft Terrace Apt. A6," rather than the address defendant had provided. Clearly, the record does not support this assertion. Rather, the record reflects that defendant registered his address as "1010 Foxcroft Ln Building # 604 Apt. A6 Statesville N.C. 28677" and Deputy James "attempt[ed] a compliance check regarding the defendant . . . [at] the apartment listed as 1010 Foxcroft, Building 604."

¶ 34        At trial, Deputy James testified as to the events previously described. Deputy James also testified that he believed defendant was trying to trick him and avoid supervision by providing an incorrect address. Deputy James further testified that by providing an address on 25 June 2019, defendant had an excuse from signing the homeless log on 21 June 2019 and 24 June 2019. In addition, the jury heard testimony from the apartment manager, Heidi Daelhouser, who testified that defendant answered the door of Apartment A6, Building 602, on 25 June 2019 when

she knocked on the apartment's door. She also testified that defendant did not "have any type of . . . lease agreement with [the] apartments."

¶ 35        The majority implies that defendant was going to be evicted from the apartment. However, the record does not reflect that eviction proceedings began against defendant. Additionally, the majority states that "the fact that defendant was seen in Building 602 once does not give rise to any inference regarding where defendant lived" and that the "evidence is too speculative to establish that defendant lived in Building 602." To be clear, Ms. Daelhouser saw defendant answer the door to the apartment when she knocked. Furthermore, defendant stated, "we'll be out by morning," indicating that he resided at the apartment. This goes beyond "mere presence" and certainly demonstrates "activities possibly indicative of a person's place of residence." *State v. Crockett*, 368 N.C. 717, 723 (2016) (quoting *State v. Abshire*, 363 N.C. 322, 332 (2009)). The majority also claims that defendant was at "a friend's apartment." There is nothing in the record to support this assertion.

¶ 36        At the close of the State's evidence, defendant made a motion to dismiss for insufficient evidence, arguing that "there is not enough evidence that [defendant] wrote that apartment number down to deceive his supervision." The trial court denied the motion, finding that "there is evidence for the jury to consider." Defendant did not present any evidence during his case-in-chief. At the close of all evidence, defendant renewed his motion to dismiss.

## II.    Standard of Review

¶ 37        The question for a court on a motion to dismiss for insufficient evidence "is whether there is substantial evidence . . . of each essential element of the offense charged, or of a lesser offense included therein." *State v. Powell*, 299 N.C. 95, 98 (1980). "If so, the motion is properly denied." *Id.* Substantial evidence is the same as more than a scintilla of evidence. *Id.* at 99.

> In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, *taken singly or in combination*, satisfy it beyond a reasonable doubt that the defendant is actually guilty.

*State v. Barnes*, 334 N.C. 67, 75–76 (1993) (cleaned up). "When ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence." *State v. Fritsch*, 351 N.C. 373, 379 (2000).

## III.  Analysis

¶ 38     Subsection 14-208.11(a) establishes that "[a] person required by this Article to register [with the sex offender registry] who willfully . . . [f]orges or submits under false pretenses the information or verification notices required under this Article" is guilty of a Class F felony. N.C.G.S. § 14-208.11(a).

¶ 39     "Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Bell*, 285 N.C. 746, 750 (1974). Willful intent "implies committing the offense purposely and designedly in violation of law." *State v. Stephenson*, 218 N.C. 258, 264 (1940). A defendant acts "under false pretenses" when they represent a falsity with the intent to deceive. *State v. Parker*, 354 N.C. 268, 284 (2001). "[T]he false pretense need not come through spoken words, but instead may be by act or conduct." *Id.*

¶ 40     As accurately described by the Court of Appeals, and acknowledged by the majority, the evidence at trial showing intent was as follows:

> (1) on 25 June 2019, [d]efendant represented both that he resided at 1010 Foxcroft Lane, Building 604, Apartment A6, and that he was homeless—two things that could not both be true; (2) that very same day, [d]efendant was seen at Building 602, Apartment A6, not Building 604, Apartment A6, where he represented to the Sheriff's Office he resided, suggesting that he did not, in fact, reside in Building 604 despite representing that he did (but which could also tend to show that he resided in neither place, and was homeless on 25 June 2019); and (3) on 26 June 2019, an occupant of the apartment where [d]efendant claimed he lived informed a deputy that

[d]efendant did not live there. . . .

> . . . Deputy James [testified] that [he] believed the [d]efendant was trying to trick [him] and avoid supervision by providing an incorrect address. The jury also heard [from Deputy James] of a potential motive that by providing an address on 25 June 2019, this gave [d]efendant an excuse from signing the homeless log on 21 June 2019 and 24 June 2019.

*State v. Lamp*, 281 N.C. App. 138, 2021-NCCOA-698, ¶¶ 13–14.

¶ 41 Here, the majority improperly invades the province of the jury and painstakingly reweighs each fact presented for the jury's consideration in over three pages of discussion, clearly violating the requisite standard of review. Evidence must be viewed "in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies . . . are for the jury to resolve." *Barnes*, 334 N.C. at 75 (1993) (citing *State v. Benson*, 331 N.C. 537, 544 (1992)).

¶ 42 "If the law is against you, argue the facts." Evidently, if the facts are against you, invent your own. The majority here is inventing their own version of the facts, with absolutely no support in the record. There is no evidence to support that defendant moved into a "friend's apartment." There is no evidence to support that defendant was being evicted. There is no evidence to support that Deputy James attempted to verify an "outdated" address. There is no evidence to support that "defendant has already informed the sheriff's office that he no longer resided at

Foxcroft Apartments and was homeless again" when Deputy James performed a compliance check. Not only is there no evidence to support that Deputy James performed a compliance check on the wrong apartment, *the record and transcript directly contradict this assertion made by the majority*. Yet the majority states these are the facts of the case.

¶ 43        When the evidence in the record is viewed in the light most favorable to the State, a reasonable jury could have inferred, and in fact did infer, that defendant had the requisite intent to willfully submit an incorrect address under false pretenses. The evidence presented by the State is "more than a scintilla" and is sufficient to survive a motion to dismiss. *Powell*, 299 N.C. at 99. Additionally, "[c]ircumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *Barnes*, 334 N.C. at 75 (quoting *State v. Stone*, 323 N.C. 447, 452 (1988)). Although defendant argued an hypothesis of innocence, the ultimate merits of his hypothesis should be weighed by the jury, as it did during defendant's trial, not reweighed by this Court. *See id.*

¶ 44        Therefore, the trial court did not err by denying the motion to dismiss, and the Court of Appeals did not err by holding that there was no reversible error. Accordingly, I respectfully dissent.

Chief Justice NEWBY and Justice BERGER join in this dissenting opinion.