IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-664

Filed 4 March 2026

Stokes County, No. 21CR050633-840

STATE OF NORTH CAROLINA

v.

DHRUVA MAHARAJA-DAS BARBOUR, Defendant.

Appeal by defendant from judgment entered 16 November 2023 by Judge Angela B. Puckett in Stokes County Superior Court. Heard in the Court of Appeals 12 August 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Michael T. Henry, for the State.*

*Reece & Reece, by Mary McCullers Reece, for defendant-appellant.*

GORE, Judge.

Defendant Dhruva Maharaja-Das Barbour appeals his judgment for voluntary manslaughter. Defendant was sentenced to 73 to 100 months' imprisonment. Defendant seeks review of the denial of his motion to dismiss, plain error review of the castle doctrine jury instruction, and for *ex mero motu* review of a portion of the State's closing argument. Upon review of the briefs and the record, we discern no error, no plain error.

**I.**

Defendant lived in a small Hare Krishna community alongside Lawrence Anderson ("Lawrence"). The people in this community ate together and participated in multiple practices of the Krishna religion, which is a sect of Hinduism, on a weekly basis. On a daily basis, people from the community would spontaneously visit Lawrence to talk and eat together; his house was seen as a "local hangout." Defendant also visited with Lawrence on multiple occasions. Defendant and Lawrence were known as lifelong friends.

It was common for the members of the community to walk across each other's properties for shortcuts to get to the temple, and to help each other with various home projects. Lawrence had a reputation for helping members of the community with various tasks, such as cleaning, changing water filters, mowing lawns, and bagging leaves. Shortly before the altercation between Lawrence and defendant that is the subject of this case, Lawrence bought a zero-turn lawn mower that he was very excited about because it would make mowing his lawn and others easier.

On 30 April 2021, video footage evidence from defendant's surveillance camera showed Lawrence mowing defendant's lawn. Lawrence's lawn mower became stuck in a ditch on defendant's property and Lawrence left the lawn mower. The next day, defendant found the lawn mower in his yard and called the Sheriff's Department to report an unidentified lawn mower in his yard. Defendant stated he did not know whose lawn mower it was and that he reviewed the security footage but did not see

anything in the footage to indicate who the owner was. Defendant requested the lawn mower be towed from his property and it was.

Later, on 1 May 2021, video footage from defendant's security camera showed Lawrence park his car near defendant's driveway and walk towards defendant's property with a tow strap. The video footage shows Lawrence gesturing towards the woods and defendant shaking his head in the negative. Lawrence began walking toward the wooded area and defendant went into his house and retrieved his shotgun. Lawrence returned from the woods and pointed again towards the woods while talking with defendant. Defendant made gestures and Lawrence walked away while defendant reentered his home.

Soon after, Lawrence reentered the yard from the driveway and defendant again appeared with his shotgun and appeared to shake his head negatively in response to Lawrence. Lawerence crossed the driveway and passed in front of defendant as defendant shot Lawrence in the head. Defendant looked at the camera, shrugged his shoulders and reentered the home. Lawrence died at the scene from the shotgun wound to his head. There was no alcohol in his system.

Defendant alleged Lawrence was warned by him to get off his property after telling Lawrence the lawn mower was not there. Defendant threatened Lawrence that if he did not get off defendant's property, defendant would shoot him in the face. Defendant alleged he repeated his threat but Lawrence "sped his pace and

aggressively" came toward him and said "No, you're not." Defendant also told officers that Lawrence was drunk.

Defendant was indicted for voluntary manslaughter. At trial, defendant moved to dismiss on the grounds of defense of habitation, but the motion was denied. During the charge conference, defendant argued the language regarding excessive force should be removed from the defense of habitation instruction, also known as the castle doctrine. Defendant did not seek inclusion of the five statutory circumstances to rebut the presumption of reasonable fear under the castle doctrine statute. Defendant's suggested language for this portion of the jury instructions was that the "presumption applies absent evidence to the contrary." The trial court and the parties agreed language regarding excessive force was relevant for the self-defense instructions.

During the State's closing argument, the State emphasized defendant had no reason to fear based upon Lawrence's reputation and knowing he was only trying to retrieve his lawn mower. The State also discussed excessive force and communicated the presumption of reasonable fear when a person is lawfully in their own home. It argued that it must "prove defendant had no reason to be afraid" to overcome this presumption.

The defense argued that under the castle doctrine when a homeowner is confronted by "an intruder on the property" there is a "presumption that the homeowner is in reasonable fear of his life or serious bodily harm unless the State

proves to you beyond a reasonable doubt otherwise." Further, the defense argued the presumption was in place and that defendant was "in fact in fear for his life or safety unless the State proves to you by evidence that he did not so fear and thus did not act in self-defense." And again, the defense stated, "He is on his property. He has a right to use deadly force unless, unless again, the state proves to you beyond a reasonable doubt that he was actually not in fear."

The jury returned a guilty verdict for voluntary manslaughter. The trial court entered judgment for voluntary manslaughter and sentenced defendant to 73 months to 100 months' imprisonment. Defendant timely appealed.

## II.

Defendant appeals of right pursuant to N.C.G.S. §§ 7A-27(b)(1) and 15A-1444(a). Defendant seeks review of the following: (1) whether the trial court erred by denying his motion to dismiss on the grounds he was immune under the castle doctrine; (2) whether the trial court plainly erred by failing to state the factors in N.C.G.S. § 14-51.2(c) and to explain these factors are the only rebuttal to the castle doctrine's presumption of fear; and (3) whether the trial court abused its discretion by failing to intervene *ex mero motu* during the State's closing argument.

### A. Motion to Dismiss

Defendant argues the trial court erred by denying his motion to dismiss because the State allegedly failed to present evidence to overcome the protections afforded within the castle doctrine pursuant to N.C.G.S. § 14-51.2. According to

defendant, the State's evidence did not overcome his castle doctrine defense. We disagree.

"[W]e review the denial of a motion to dismiss de novo." *State v. Corbett*, 269 N.C. App. 509, 525 (2020). The State must present substantial evidence of each "essential element of the crime and that the defendant is the perpetrator" to overcome a motion to dismiss. *State v. Chekanow*, 370 N.C. 488, 492 (2018). Further, the trial court must consider the evidence "in the light most favorable to the State" and give it "the benefit of every reasonable inference," including resolving any evidentiary contradictions in the State's favor. *Id.* "Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, it is for the jury to decide whether the facts, satisfy it beyond a reasonable doubt that the defendant is actually guilty." *State v. Fritsch*, 351 N.C. 373, 379 (2000) (cleaned up).

A defendant may raise a complete self-defense claim to refute the charges brought against him. Our Supreme Court acknowledged that "when the State's evidence and that of the defendant is to the same effect, and tend only to exculpate the defendant, his motion to dismiss should be allowed." *State v. Carter*, 254 N.C. 475, 479 (1961) (cleaned up). "When a defendant raises a self-defense claim on a motion to dismiss, the State must present sufficient substantial evidence which, when taken in the light most favorable to the State, is sufficient to convince a rational trier of fact that the defendant did not act in self-defense." *Corbett*, 269 N.C. App. at 526. However, as stated in *Corbett*, "[t]his Court has repeatedly distinguished self-defense

cases from *Carter* where there is circumstantial or physical evidence contradicting exculpatory evidence." *Id.* at 527.

In the present case, defendant argues the State failed to present evidence to overcome the presumption pursuant to section 14-51.2(c) and therefore, the trial court should have granted the motion to dismiss. However, this argument bypasses significant steps within the framework of the castle doctrine. Such an argument relies upon the assumption defendant has demonstrated through uncontradicted evidence that he qualifies for the castle doctrine's statutory presumption. Defendant's reliance upon *Carter* is misplaced. In *Carter*, as articulated by *Corbett*, the evidence for both the State and the defendant was the same. *Corbett*, 269 N.C. App. at 527. The only evidence available, and upon which both parties relied, was the defendant's testimony of her self-defense. *Id.* Because there was no contradictory evidence and the only evidence presented pointed to the defendant's self-defense, our Supreme Court reversed the lower court's denial of the motion to dismiss. *Id.*

Similar to *Corbett*, and unlike *Carter*, the State presented contradictory evidence that could suggest defendant did not qualify for the castle doctrine protection. *See Corbett*, 269 N.C. App. at 528 (discussing how the State presented substantial contradictory evidence to the defendants' evidence that would allow a rational jury to determine they "did not act in self-defense"). In the present case, the trial court considered the evidence in the light most favorable to the State and gave the State the benefit of all reasonable inferences. Such contradictory evidence

included: evidence it was common for neighbors to come onto each other's property; the long and friendly relationship between Lawrence and defendant; evidence Lawrence was searching for his lawn mower; video footage of the entire incident; video footage Lawrence was casually walking near defendant, rather than "bearing down on defendant"; and video footage Lawrence was not even looking in defendant's direction when defendant shot him. This evidence is sufficient to contradict defendant's castle doctrine defense claim and overcome the motion to dismiss. Accordingly, the trial court did not err by denying defendant's motion to dismiss.

Further, as it relates to the castle doctrine, once there is contradictory evidence, it is for the jury to determine whether the defendant is afforded the castle doctrine protection pursuant to section 14-51.2(b). Our Supreme Court recently articulated this interplay between the castle doctrine and the jury. The Court stated,

> When a defendant asserts the castle doctrine defense at trial, the jury must first determine whether the defendant is entitled to the presumption as set forth in section 14-51.2(b). If the jury finds that the defendant is not entitled to the presumption, the castle doctrine statute does not apply and the jury must determine the defendant's culpability under section 14-51.3, the general self-defense statute.

*State v. Phillips*, 386 N.C. 513, 525 (2024). As expressly stated, a defendant may only obtain the protection of the castle doctrine once a factual determination is made based upon section 14-51.2(b). Specifically, the jury must determine whether the decedent

entered the home, including the curtilage, unlawfully, and whether the unlawful entry was forceful.

Only upon this determination does a defendant acquire the reasonable presumption as articulated in section 14-51.2(b). Section 14-51.2(b) states,

> (b) The lawful occupant of a home . . . is presumed to have held a reasonable fear of imminent death or serious bodily harm to himself . . . when using defensive force that is intended or likely to cause death or serious bodily harm to another if both of the following apply:
>
> > (1) The person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully and forcibly entered, a home, motor vehicle, or workplace.
> >
> > (2) The person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

N.C.G.S. § 14-51.2(b) (2020) (cleaned up). These legal steps are prerequisites to the State's necessity to rebut the presumption of reasonable fear through the factors listed in section 14-51.2(c). *See Phillips*, 386 N.C. at 524–25. We take time to lay out this legal framework because defendant's argument suggests an interpretation of the castle doctrine that is too liberal. Misconstruing this legal process, as articulated by the *Phillips* Court, could unnecessarily embolden the public to believe it has a "license to kill." *Id.* at 524 (cleaned up) ("The expansive protections afforded to lawful occupants of a home does not mean the castle doctrine is a license to kill or that the

statute allows for open season on Girl Scouts and trick-or-treaters."). This is an inaccurate understanding of the law.

## B. Jury Instructions

Next, defendant seeks plain error review of the castle doctrine jury instructions. Specifically, defendant argues the trial court committed plain error by instructing the jury the presumption in section 14-51.2(b) could be rebutted "without regard to the statutory factors listed in section 14-51.2(c)." Also, defendant argues none of the listed factors existed and therefore, this instruction allowed the jury to determine the presumption was rebutted on other grounds, and that was a fundamental error. We disagree.

Defendant's failure to object to the jury instructions limits appellate review to plain error. Plain error is available in "extraordinary cases." *State v. Reber*, 386 N.C. 153, 158 (2024). Defendant has the burden of showing (1) "a fundamental error occurred at trial"; (2) that the error "had a probable impact on the outcome"; and (3) "that the error is an exceptional case that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up). Importantly, the second prong of this test requires a "showing that a jury probably would have reached a different result"; the term "probably" is synonymous with the word "doubtless." *Id.* at 159.

As recently stated in *State v. Gillard*,

> This exacting standard demands that even if error exists

under step one, a defendant must still demonstrate that a jury probably would have reached a different result, which requires a showing that the outcome is significantly more likely than not. Even then, defendant must show that this is the exceptional case in which plain error review is warranted because the purported error affects the fairness, integrity or public reputation of judicial proceedings.

386 N.C. 797, 820 (2024) (cleaned up).

In the present case, defendant challenges the portion of the instruction that states the following:

> In addition, absent evidence to the contrary, the lawful occupants of a home or place of residence is presumed to have held a reasonable fear of imminent death or serious bodily injury to himself or another when using defensive force and is intended or likely to cause death or serious bodily injury to another if both of the following circumstances occur: That is, a person against whom the defensive force was used was in the process of unlawfully and forcibly entering or had unlawfully and forcibly entered a home or place of residence or that person had removed or was attempting to remove another against that person's will from the home and the person who uses defensive force knew or had reason to believe that the unlawful and forcible entry or unlawful enforceable act was occurring or had occurred.

Our Supreme Court made clear that the trial court must instruct the jury on the factors listed in section 14-51.2(c) and in so doing, "recite the law as defined by the legislature." *Phillips*, 386 N.C. at 525, 528. This is required because "the castle doctrine's statutory presumption of reasonable fear may only be rebutted by the circumstances contained in section 14-51.2(c)." *Id.* at 525.

In the present case, the trial court's failure to recite the factors in the jury instructions was error. However, on appeal, our review is limited to whether the trial court plainly erred by failing to instruct on the specific circumstances listed in section 14-51.2(c). This Court recently published a decision that concluded the trial court's erroneous castle doctrine jury instructions amounted to plain error. *State v. Thomas*, 921 S.E.2d 847, 862 (N.C. Ct. App. 2025). In *Thomas*, the jury instructions for the castle doctrine were substantially the same as in the present case. *Id.* at 854. We determine that *Thomas* is distinguishable.

In the present case, after reviewing the record, we determine the trial court did not plainly err. The evidence in this case regarding whether Lawrence's entry was forceful or unlawful distinguishes it from *Thomas.* Such evidence includes: the relationship between Lawrence and defendant, the frequency by which the community accessed each other's property, and the video footage showing the interaction between Lawrence and defendant leading up to and including the shooting. Such video footage showed Lawrence searching for his lawn mower, being ordered off the property by defendant, and Lawrence returning to defendant's property. The video footage contradicted defendant's claim Lawrence was "nearly upon him when [defendant] fired his only shot." The defendant carries a heavy burden under plain error review to "demonstrate that a jury probably would have reached a different result, which requires a showing that the outcome is significantly more likely than not." *Gillard*, 386 N.C. at 820 (cleaned up).

On the facts of this case, as opposed to *Thomas*, we do not believe defendant proved the jury's verdict probably would have differed with proper instructions. Accordingly, it was not probable that the jury's determination would have differed with the additional instructions. Nor was this an exceptional case that seriously affected the integrity, fairness, or "public reputation of judicial proceedings." *Reber*, 386 N.C. at 158. The trial court did not commit plain error by failing to include the circumstances listed in section 14-51.2(c) in the jury instructions.

## C. The State's Closing Argument

Defendant also argues the trial court committed reversible error by failing to intervene *ex mero motu* during the State's closing argument. We disagree.

We review this type of challenge to determine "whether the argument was so grossly improper that the trial court erred in failing to intervene *ex mero motu*." *State v. Trull*, 349 N.C. 428, 451 (1998) (cleaned up). This standard is an "exceedingly high bar." *Reber*, 386 N.C. at 163. The statements must have gone "so far beyond the parameters of propriety that the trial court was forced to intervene to protect the rights of the parties and the sanctity of the proceedings." *Id.* "In order to determine whether defendant was prejudiced by the prosecutor's language in closing argument, we assess the likely impact of any improper argument in the context of the entire closing." *State v. Copley*, 374 N.C. 224, 230 (2020).

Defendant takes issue with the following statements by the State during its closing argument:

When a trespasser or unwelcome visitor invades the premises of another, the latter has the right to remove him. And if he resists, he may use sufficient force to remove him taking care, however, to use no more force than is necessary to accomplish that object. . . . So in this situation we have a homeowner who wants to remove a trespasser. The homeowner is not removing a killer or an assailant; he is removing a trespasser. So he is entitled to the force but not more force, not excessive force, not more force than necessary to accomplish that object. It would have been within his rights to put his hands on Lawrence if that's what it would have taken. But you can't use deadly force unless deadly force is being used against you.

There is a presumption to someone who is lawfully in their own home and in a situation where someone else unlawfully enters or attempts to enter that home. And you will hear that there is a presumption that the homeowner in that situation is in fear of the intruder killing or causing serious bodily harm. And we don't doubt that's the law. We can't doubt that. That's absolutely true. There's a presumption there. . . . But as soon as we prove that he had no reason to be afraid, that presumption goes away. Just like his presumption of innocence goes away as soon as we prove that he is guilty. So don't misunderstand the presumption or don't let it be misunderstood. That presumption does not lock you folks into anything, it doesn't commit you to any decision. We've said all throughout, the decision is yours. You must decide, regardless of what the law says you may consider, you must decide whether the defendant reasonably feared for his life.

The State's closing does appear to conflate the complete self-defense law with the castle doctrine. However, what is unclear contextually and does not meet the high threshold of gross impropriety, is whether the State was jumping back and forth in its description between the law of self-defense and the castle doctrine. The trial court also instructed on complete self-defense because, as previously noted, if a

defendant does not meet the requirements for a presumption under the castle doctrine, the defendant is limited to a self-defense argument. Excessive force and reasonable fear are legal questions to resolve in the context of the self-defense doctrine. *See Corbett*, 269 N.C. App. at 526 (stating the four elements of self-defense including "the defendant's belief was reasonable" and "the defendant did not use excessive force").

The trial court has the duty to instruct the jury on the law and specifically instruct the jury to apply the law as given by the court and no other way. *See State v. Holloman*, 369 N.C. 615, 625–26 (2017). The jury was instructed on both the castle doctrine and the self-defense doctrine as requested by the State and defendant. Because the State's closing argument related to both areas of law, it was not grossly improper, nor did it go outside the bounds of propriety. Therefore, defendant's final argument is overruled.

## III.

For the foregoing reasons, the trial court properly denied defendant's motion to dismiss. The jury instructions did not amount to plain error, nor did the State's closing argument require the trial court to intervene *ex mero motu*.

NO PLAIN ERROR, NO PREJUDICIAL ERROR.

Judges GRIFFIN and STADING concur.